(57 South. 286.)

No. 18,535.

RICHARD v. RICHARD.

(Jan. 15, 1912.)

*(Syllabus by the Court.)*

1. WILLS (§ 148*)—NUNCUPATIVE WILL—VALIDITY.

Where a nuncupative will by public act is not dictated by the testator, or written by the notary, in the presence of the witnesses required by law, where one of the subscribing witnesses did not understand the language in which the will is written, and where what was done was not done without turning aside to other acts, the will is void.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 358–366; Dec. Dig. § 148.*]

2. DESCENT AND DISTRIBUTION (§ 69*)—ACTION BETWEEN HEIRS — SETTING ASIDE DONATION.

In order to establish the equality between heirs of the same degree, which is the cardinal principle of the Louisiana law of inheritance, an heir may sue his coheir to set aside a donation, disguised as a sale, from the common ancestor to such coheir.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 208–212; Dec. Dig. § 69.*]

3. DESCENT AND DISTRIBUTION (§ 69*)—DISGUISED DONATION—SETTING ASIDE.

A conveyance, purporting to be a sale, for a recited consideration of cash and notes, will be held to be a disguised donation where the evidence shows that no cash was paid, and that the notes were retained by the putative vendee, and were soon afterwards made the subject of a formal donation to him by the putative vendor.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 208–212; Dec. Dig. § 69.*]

Appeal from Sixteenth Judicial District Court, Parish of St. Landry; B. H. Pavy, Judge.

Action by Gerasime Richard against John Percy Richard. Judgment for plaintiff, and defendant appeals. Affirmed.

John N. Ogden and R. Lee Garland, for appellant. Lewis & Lewis, for appellee.

Statement of the Case.

MONROE, J. Plaintiff brings this suit in behalf of his minor child, Zule Richard, who, by representation of her mother, is coheir with defendant (her uncle) of the estate of her grandfather, H. Valsin Richard, lately deceased, and he seeks to annul four instruments in writing executed by decedent in favor of defendant, to wit: (1) A notarial act of sale of date January 15, 1909, purporting to sell 137½ arpents of land; (2) a notarial act of date April 15, 1909, purporting to donate two promissory notes of $1,000 each; (3) a notarial act (executed contemporaneously with said donation) of lease for 10 years of all the property owned by decedent, not included in the sale of January 15th; (4) a will, of even date with the two instruments last mentioned, whereby decedent bequeathed the disposable portion of his estate to defendant and appoints him his executor with seisin. The petition alleges that all of said instruments were executed by decedent "in pursuance of the purpose, which he had formed, to divert his entire estate from petitioner's said daughter, and invest the said John Percy Richard with its sole ownership and possession;" that the instrument first mentioned was a "purported or pretended sale of a simulated character" for $500 cash, and $2,000, in two notes of $1,000 each, with a stipulation to the effect that the vendor should retain the "use and occupancy" of the property, and that it should be delivered to the vendee only upon his death, and that it is void, not only for nonpayment of the price and nondelivery of the property, but because it was intended as a substitute for a last will, and that, if intended as a donation inter vivos, it is void for nondelivery of the thing donated; that the act of dona-

tion is stricken with nullity, not only because the two notes which are the subject thereof are the notes which were executed by the purchaser as in part payment of the price fixed in said void act of sale, but, because said donation constituted part of the plan, illegally, to deprive the minor of her share in her grandfather's estate; that said lease is void because it was intended thereby to dispose of the use of all the property remaining to decedent for ten years after his death, thereby substituting the lease for a testamentary disposition, the pretended lessor being, at the time of its execution, in articule mortis, and the consideration moving to him being so inadequate as to prove said lease to have been a simulation; that said last will is void, not only because it constitutes part and parcel of a purpose on the part of "deceased to deprive petitioner's daughter of any share in the estate," but also because it was not dictated to, or written down by, the notary in the presence of the witnesses, and because one of the witnesses could neither speak nor understand the language in which said will is written. A preliminary injunction was issued to restrain defendant from disposing of the movable property of the estate pending the suit. The answer of defendant is, in effect, a denial of the allegations of the petition, and an affirmance of the validity of the instruments attacked. There was judgment in the district court in favor of plaintiff as prayed for, and defendant has appealed, but no argument, oral or written, has been presented to this court in his behalf. The evidence shows that, when the instruments in question were executed, decedent was prostrated with an illness with which he had been suffering for some time and of which he died in the month of May following their execution.

Defendant and his wife were living with him and had been so living for a number of years, during which decedent had frequently assisted defendant financially, and defendant does not appear to have had any means or any remunerative occupation when the instruments here in question were executed.

There was no cash paid by the purchaser in the soi disant sale, nor do we think that any equivalent for cash passed to the decedent, and the notes, which are said to have represented the balance of the purchase price, are shown to have been delivered by the notary to the purchaser, and to have been retained by him until April 15th following, when the act by which they were donated to him was executed, upon which occasion he produced them and handed them to the decedent, who immediately returned them to him. The stipulation in the act of sale concerning the delivery of the property reads as follows (quoting literally):

"It is hereby specially stipulated and agreed as a part condition of this sale, and to which vendor retains and purchaser grants, that the said H. Valsin Richard retains for himself the general usufruct and usage and benefits of the foregoing described lands herein conveyed for his natural life; that the same as were it his own and for his natural lifetime. The delivery of the aforesaid land shall be taken possession of by the said J. P. Richard only after the death of the said H. Valsin Richard."

The facts in regard to the donation have been stated. The lease purports to be for 10 years at $50 a year of the "plantation" (as it is called) upon which the parties were living containing 125 arpents of land, together with the buildings and improvements and all the movable property, animals, and farming implements thereon or thereto attached. It is conclusively shown that the will was neither dictated by the decedent nor written down by the notary in the presence of the witnesses; that one of them did not understand the language in which it is written; that it was written in a room other than that in which the decedent was lying in bed; and that whilst one of the witnesses did not reach the house until after

it had been written, and hence was not present while it was being written, the other two were, perhaps, in and out of the room whilst writing was being done, the supposed testator being in another room.

A. D. Richard, one of the witnesses referred to, had been, for some time, assisting in nursing the decedent, rendering certain services at stated intervals during the day, and he testifies that, when he reached the house upon the occasion in question, the notary and J. E. Richard (another of the subscribing witnesses) were in the kitchen; that the notary said that he was ready for the witnesses; that they all (notary and three witnesses) then went into the room where the decedent was, the notary taking his pen and ink and the will, which was already written; that the notary read the will to the decedent, and told him that it was his will, and he wanted him to sign it; and that, as the decedent was unable to help himself in the bed, he (the witness) dressed him up and helped until he signed it. And his testimony proceeds as follows:

"Q. Did Mr. Valsin, during any of the time that you were there as a witness to the will, say anything to Mr. Ogden [the notary] with reference to the will? A. No, sir; not that I heard of. Q. Was that will dictated by Mr. Richard or any of its provisions in your presence? A. No, sir. Q. Did he make any reference whatever to making a will in your presence? A. Not in my presence; no, sir. Q. Did he appear to know what he was signing or doing? How did he appear when he signed the will? A. Well, as usual, drowsy. He didn't seem to notice anything. Q. Didn't make any remark about the will? A. None at all. Q. Had the donation been signed already at that time? A. Yes, sir; the donation had been signed. Q. You were a witness to the donation? A. Yes, sir. Q. Did you see anything between the parties when the donation was made? A. Not more than seeing Percy hand over the papers to the old man, claiming that they were the notes he had against him, and, after the donation was signed, turned the notes over to Percy. Q. Then, at the time the donation was made, Percy had the notes in his possession? A. He was the one who handed them to the old man in the bed, when he came in to sign. Q. And the old man handed them back to him? A. Yes, sir. Q. Was anything said at that time before the old man? A. No, sir. Q. How long before the will was the donation made? A. Well, about an hour—hour and quarter—I suppose; at least when it was signed. I don't know how long it was—may be—but it was signed before the witnesses seen it—an hour and a quarter."

Neither of the other witnesses pretend that A. D. Richard was present at any time prior to the moment of which he speaks—i. e., after the will had been written—and both of them admit that the writing of the will was done in another room than that in which the decedent was lying, and it appears that they were in and out whilst it was being written. An effort was made to show by them that before the will was written the decedent told the notary what he wanted done, and that, after the will was read to him, the decedent was asked whether it was satisfactory, and that he answered in the affirmative. The testimony of both witnesses is, however, confused and unsatisfactory. One of them demonstrated on the trial that he knows so little of the English language that he could not have known whether he understood or misunderstood anything that may have been said between the decedent and notary; and the latter was not called to the stand.

## Opinion.

[1] Reversing, in part, the order in which we have considered the facts, and dealing, first, with the questions of law presented by the attack upon the will, we are of opinion that the will is void, because not dictated by the testator or written by the notary in the presence of the witnesses required by law; because one of the subscribing witnesses was incompetent by reason of his not understanding the language in which the will was written; and because what was done was not done without interruption or turning aside to other acts. C. C. art. 1578; Breaux v. Gallusseaux, Executor, 14 La. Ann. 233, 74 Am. Dec. 430; Succession of Dauterive, 39 La. Ann. 1094, 3 South. 341.

[2, 3] The sale was not simulated in the sense of not being intended to convey title to the property, but, considered in connection with the donation, which followed, must be regarded as a donation in disguise. In Dupuy v. Dupont, 11 La. Ann. 226, where a similar state of facts was presented and the sale had been set aside by the district court, as a disguised donation, Spofford, J., as the organ of this court (Voorhies and Buchanan, JJ., dissenting), said:

"It would have been more formal to have declared the sale a disguised donation to the daughter, and decreed that she should collate the property, in a partition to be made hereafter among the heirs of Dupuy. The advantage which a father bestows upon his son, though in any other manner than by donation or legacy, is likewise subject to collation. Thus, where a father has sold a thing to his son at a very low price, or has paid for him the price of some purchase, or has spent money to improve the son's estate, all that is subject to collation. C. C. 1838, art. 1326 [1248]. As there is enough in the record to show that the decree, as rendered by the district judge, will produce substantially the same result as a more formal judgment, it need not be disturbed."

In Laycock v. Bird, 13 La. Ann. 173, being an action to set aside a sale of land and slaves, as a donation in disguise, the court found that there was a price paid, which, though very low, exceeded one-half the real value of the property; and said:

"So there was no lesion beyond moiety nor such proof as is required by article 2419 [2444] of the Code to set aside a sale in toto as a simulation or disguised donation. The contract seems to have been a real one, although, perhaps, made to give the vendee an indirect advantage over his coheir. The plaintiff's remedy, if any she has, is, not by an action in the present form, but by an application to have her coheir collate when a partition takes place."

In Montgomery v. Chaney, 13 La. Ann. 207, being also an action by forced heirs to set aside, as a donation in disguise, a sale by their ancestor to a coheir of certain slaves, the court, inter alia, said:

"Equality between heirs of the same degree is the cardinal principle of the Louisiana law of inheritance. No deviation is allowed from this rule, save within a narrow limit and by pursuing the forms prescribed by law. If a father desires to prefer one child to another in the distribution of his property, he is bound to state his design, expressly, by declaring that the gift or legacy is intended 'as an advantage or extra portion,' or 'using equivalent terms. C. C. art. 1311,' [1233]. The sales of immovable property or slaves, made by parents to their children, may be attacked by the forced heirs, as containing a donation in disguise, if the latter can prove that no price has been paid, or that the price was below one-fourth of the real value of the immovables, or slaves sold, at the time of the sale. C. C. art. 2419 [2444]. * * * *"

There can be no doubt, therefore, that, quoad, the sale here attacked, this action falls under C. C. art. 2444, and is properly brought; and, as the donation of the notes was merely complemental of the disguised donation of the real estate, the two will fall together.

Whether the lease should be regarded as falling under C. C. art. 2444, or under C. C. art. 1248, is a question which the defendant has not raised, and, as we are inclined to think that the interests of both litigants will be best subserved by restoring all the property in dispute to the succession, thereby facilitating a partition, without further complication, we shall leave it undetermined. The judgment appealed from is accordingly affirmed at the cost of the defendant and appellant.