No. 2148.
Second Circuit Appeal.

---

**MRS. ELLEN GOUGH STEEN AND HUSBAND ET AL., v. LOUISIANA CENTRAL LUMBER COMPANY ET AL.**

---

(March 30, 1925, Opinion and Decree.)
(June 6th, 1925, Opinion and Decree on Rehearing)

---

(*Syllabus by the Editor.*)

1. Louisiana Digest—Sales—Par. 1, 2.
Where the vendee pays the cash consideration and goes into possession of the property, it is a sale even though the act contains the word "bequeath" together with the words, "grant, sell and deliver."

ON A REHEARING.

2. Louisiana Digest—Pleading—Par. 114.
Where the pleadings did not state that the act of sale was null for want of a fixed price and null as an onerous donation because the value of the land exceeded by one-half the amount paid, the right is reserved to plaintiff to bring

a suit against the vendee to show this and demand collection, but this will not affect the rights of third persons who purchased the property if the act in dispute was an act of sale.

Appeal from Thirteenth Judicial District Court of Louisiana, Parish of Caldwell. Hon. F. E. Jones, Judge.

REYNOLDS, J. This is a suit against the Louisiana Central Lumber Company and W. H. Gough to have a transfer from Thomas N. Gough to W. H. Gough on November 14, 1902, transferring certain property for the expressed consideration of $100.00, declared null and void, and to recover from the Louisiana Central Lumber Company judgment for the value of timber bought by the Louisiana Central Lumber Company from W. H. Gough, the value of which is admitted to be $797.50.

There was judgment for the defendants and plaintiffs have appealed.

Judgment affirmed.

Julius T. Long, of Shreveport, and A. Leonard Allen, of Winnfield, attorneys for plaintiffs, appellants.

Stubbs, Theus, Grisham & Thompson, of Monroe, attorneys for defendants, appellees.

OPINION.

In this case the plaintiffs sue to have decreed null and void the following transfer, to wit:

"State of Louisiana,
"Parish of Caldwell.

"Know all men by these present That I, Thomas N. Gough of the aforesaid Parish and State, party of the first part, do this day grant, sell, bequeath and deliver to W. H. Gough of the same State and Parish, party of the second part, for and in consideration of the sum of one hundred dollars cash, whereof I, T. N. Gough, hereby acknowledges receipt of for the said W. H. Gough his heirs and assigns to hold forever the said tract of land as hereinafter described, being the N½ of SE¼, of NE¼, Sec. 21 NW¼, of SW¼, of Section 22, T. 12, N. R. 2 W., La. Mer.,

containing 159 69-100 acres, under Sec. 2291 of the Revised Statutes of the United States.

"Whereof we have affixed our hand and seal this 14th day of Nov., 1902.

"Witness:

|  |  | His |  |
|---|---|---|---|
| "J. W. Neal, | | T. N.  X  Gough, | |
| His | | Mark | |
| "T. J.  X  Gough, | | His | |
| Mark | | W. H.  X  Gough." | |
|  |  | Mark" | |

On the reverse side of the sheet:

"This done and signed before me, a Justice of the Peace for the Parish of Caldwell on this, the 14th day of Nov., 1902.

J. M. Adair, J. P."

"State of Louisiana,

"Parish of Caldwell.

"Before me, the undersigned authority, this day personally appeared T. J. Gough, who on oath, says he saw the parties to the within and foregoing deed sign the same for the purposes and considerations therein expressed, and on the date therein given; that he and J. W. Neal signed the same as attesting witnesses, and that he now recognizes all the signatures thereto to be true and genuine.

His

T. J.  X  Gough.

Mark

"Sworn to and subscribed before me, on this, the 14th day of June, A. D., 1909.

"N. L. Hower,

"Clerk of Court and ex-officio Notary Public:

"Seal of the Clerk of the District Court, Caldwell Parish.

"T. N. Gough

"Deed To

"W. H. Gough.

"Filed for record Jany 5th, 1902.

"M. L. Mecom,

"Clerk & Recorder.

"Recorded in Not. Book O, folio 13, March 10th, 1903.

"F. H. Mecom,

"Dy. Clk. & Recorder."

Plaintiffs say this document was intended by T. N. Gough as a donation.

The only word in the above document that tends to stamp it as a donation is the word "bequeath". In our opinion this

word was used by the Justice of the Peace who wrote the document because of its sounding value and not because of its true meaning. The document must be judged as a whole and not by a single word. The document does say "bequeath"; but it also says "grant", "sell" and "deliver", "for and in consideration of the sum of $100.00 cash" "whereof I, T. M. Gough, hereby acknowledges receipt of".

This document, taken as a whole, we think, clearly indicates that the parties thereto intended it to be a sale. The contracting parties thereto treated it as a sale, for under the evidence the vendee, W. H. Gough, went into possession of the property therein described shortly after the document was passed as owner and remained in possession of it as owner until his vendor's death in 1923.

In 1909, under the evidence, T. N. Gough, the vendor, W. H. Gough, the vendee, and T. J. Gough, one of the attesting witnesses, went to Columbia, the parish seat, and had the signature to the document duly proven by N. L. Hower, Clerk of the Court.

From the date the document was proved, June 14, 1909, the document became, as to all the world, a recorded deed.

Under the evidence, from the date it was signed, November 14, 1902, it was, as to T. N. Gough and his heirs, a deed translative of the property therein described.

Under it the defendant, W. H. Gough, went into possession of the property therein described as owner about 1902 and remained on it as owner until the death of his father, the vendor, in 1923.

Plaintiffs say that the transaction was a donation in disguise. Plaintiffs also contend that the transaction was a simulation. We do not think so, for under it the defendant, W. H. Gough, went into possession of the property now in dispute

and lived on same as his home for nearly or quite twenty years before the death of the vendor, and during all this time no effort was made by the vendor to dispossess the vendee, W. H. Gough, of his possession as owner.

Viewing the transaction as a sale, we have not found it necessary to pass upon the defense set up by the Louisiana Central Lumber Company.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be affirmed, with costs in both courts.

---

## ON APPLICATION FOR REHEARING.

CARVER, J. The plaintiffs' petition alleges four grounds of nullity against the deed in question:

1. As a donation, it was not in proper form, nor acknowledged, nor made before the proper officer and sufficient witnesses.

2. As a transfer or sale, it appears on its face to be without consideration, not being a sale but an admitted donation, and not having sufficient authentication to authorize its recordation and, in fact, it was a mere simulation, wherein the pretended donee or vendor attempted to place the property involved in the name of the vendee so that the vendee might hold the office of Police Jury or some such office.

3. That the said pretended donation or transfer was all the property that the said vendor or donor had in the world, for which he was paid nothing.

4. That if it should be held to be a donation, which they deny that it can, then they aver that it should be annulled as to two-thirds of same.

All of these grounds of attack are predicated on the idea that the deed was without any consideration at all and, therefore, either a pure simulation or a pure donation.

The evidence, though, satisfies us that it was neither. As to the charge of simulation, the evidence wholly disproves it. The transferror moved off of the land soon after the deed was signed (or, according to some of the witnesses, even before) and never afterwards exercised any dominion over it. The transferee moved on it either before or just after the transfer and has lived on it ever since, cultivating, improving and paying taxes on it, selling timber from it, and in every way exercising dominion.

As to the charge that it is a donation on its face, this is clearly not so. The deed recites a consideration of $100 cash.

Nor does the proof show it to be a pure donation. Defendant, W. H. Gough, admits that the $100 recited in the deed was not paid at the time, but says that he paid certain debts of the vendor within about a year afterwards, namely: To Steen, $10, to Jarrell, $37, to Dillard, $25, and to Rutland & Company a mare valued at $75, and $25 out of a bale of cotton sold them for $50.

He further testifies that he gave his father checks from time to time as he needed things and also paid him $100 at the time the act was re-authenticated. There was testimony to the effect that the Rutland debt was only $60 and that this was paid by a mare belonging to the father. But defendant, Gough's, testimony as to the other payments stands uncontradicted and was corroborated to the extent at least of proof showing that the father did owe Dillard and Jarrell.

It is not suggested how these parties were or could have been paid except by defendant, W. H. Gough, to whom the father had transferred all his property.

W. H. Gough's testimony is also corroborated by T. J. Gough as to payment of the $100 to T. N. Gough at the time the deed was re-authenticated.

As to the deed not being properly acknowledged, or proven up, this, in our opinion, is immaterial. There is no question but that T. N. Gough signed it: In-

deed, the petition so alleges. It was not necessary that it be proven up or recorded in order to bind either T. N. Gough or his heirs.

The fact that it was not passed before a Notary and two witnesses would be ground of nullity were it a pure donation, but, as said above, we think it was not this.

Of course, if it was a sale, it could be by private act.

These considerations would dispose of the case if it involved nothing but the grounds of nullity alleged in the petition, but in their application for rehearing plaintiffs' learned counsel contend that the deed is null under articles 1248 and 2444 of the Civil Code, and ask that in the event a rehearing is denied we state how, how much and when the consideration was paid, and why the transfer should not be annulled under these articles.

As to Article 1248, it does not pretend to prescribe a ground of nullity. It reads as follows:

"The advantage which a father bestows upon his son, though in any other manner than by donation or legacy, is likewise subject to collation. Thus, when a father has sold a thing to his son at a very low price, or has paid for him the price of some purchase, or has spent money to improve his son's estate, all that is subject to collation."

This clearly means that in case of a sale by a father to his son for a low price the son must collate, not the thing sold but the difference between its true value and the price he paid. It clearly implies that the sale shall stand.

Civil Code, 2444, provides:

"The sales of immovable property made by parents to their children may be attacked by the forced heirs, as containing a donation in disguise, if the latter can prove that no price has been paid, or that the price was below one-fourth of the real value of the immovable sold, at the time of the sale."

In our opinion, the transfer is not null under this article because we think a price was paid and the proof does not show that it was less than one-fourth of the value of the property. There is very little testimony as to what the property was worth in 1902. T. J. Gough says (transcript, page 58,): "You figure twenty-seven years ago that land wasn't worth more than two hundred or two hundred and fifty dollars."

The deed was passed about twenty-two years before he gave testimony. It may be that in saying 27 years he meant 22 years.

At page 59 he was asked:

"Don't you know that timber sold for $1.00 a thousand fifteen or twenty years ago—you know land like that was worth $2.50 per acre—you never bought any land for less than that—did you?"

And he answered:

"A man offered me eighty acres for a hundred dollars, but I couldn't see far enough ahead to know that it would be worth it to me."

In 1909 W. H. Gough sold the pine timber on eighty acres for $265 and in 1922 the pine on the other eighty for $100.

In those years, we know, as a matter of history, that timber was worth more than in 1902, so we are satisfied that the land had little value in 1902 for pine timber.

The proof does not show whether there was much hardwood on it at that time, but we know, too, from history, that hardwood had little value in 1902.

Ben Gough says that McDaniel offered T. N. Gough $500 for the pine. He does not say when this was. McDaniel denies negotiating with T. N. Gough at all, but was not asked whether he offered $500 for the pine to W. H. Gough, but Mc-

Daniel's principal, Central Lumber Company, afterwards bought the pine, as shown above, for $365; so we think Ben Gough must be mistaken as to McDaniel's having offered $500 for it either to T. N. Gough or W. H. Gough.

W. H. Gough paid Dillard $25, Jarrell $37, and Steen $10, or a total of $72, within a year or so after the transfer. At least, he so testifies, and it is not disputed. If he paid nothing on the Rutland debt, the land would have to have been worth $288 or more to come under the principle in question. But even if the mare given Rutland belonged to the father, the undisputed testimony of W. H. Gough is that he paid Rutland $25 out of a bale of cotton and also a further amount afterwards, as well as further sums not detailed to T. N. Gough and the $100 at the time of re-authentication.

Plaintiffs urge that W. H. Gough's testimony is not worthy of credence, but the district judge evidently believed it, and we cannot say he manifestly erred.

On the whole, in our opinion, the proof falls far short of showing that the land at the time of the transfer was worth four times what W. H. Gough paid.

Plaintiffs also urge that the transfer is void as a sale because no price was fixed. It is true the proof does not show what price was fixed nor does it show that there was a fixed price. This ground of nullity was not alleged in the petition nor was the case tried on this issue. It may be that the witnesses testifying after twenty-one years failed to state the price from want of accurate recollection and not from the fact that no price was actually fixed at the time. If it be true, though, that none was fixed, this would not, in our opinion, be a ground of nullity. If for failure to fix a certain price the transfer was technically defective as a sale, we think, in view of the fact that both of the parties to the transfer unquestionably intended the title to pass it would be good as an onerous donation, unless defective in some other particular than the failure to fix a price.

To the onerous donations, the rules applicable to pure donations do not apply.

Civil Code, 1526, reads as follows:

"In consequence, the rules peculiar to donations inter vivos do not apply to onerous and remunerative donations, except when the value of the object given exceeds by one-half that of the charges or of the services."

The condition of the proof does not enable us to determine whether the real value of the property at the time of the transfer did or did not exceed by one-half the charges imposed. If it did, then the rules peculiar to donations would, under Civil Code, 1526, apply, and one of these rules requiring donations to be by authentic act the transfer in question would be void because it was passed under private signature; but if the value at the time of the transfer did not exceed by one-half the charges imposed, it would not, we think, be null and plaintiffs' sole right would be to demand collation to the extent that the value did exceed the charges, if it exceeded them at all.

In view of the fact that this question was not raised by the pleadings and the case was not tried on that issue, and because the proof is not sufficient to enable us to decide the question either way, the right should be reserved to plaintiffs to sue to annul the act assailed in this case on the ground that it was not a sale for want of a fixed price and is null as an onerous donation because the value of the land exceeded by one-half the amount paid by W. H. Gough and, therefore, was required to be by authentic act, reserving to the defendant, Gough, also the right to show that a price was fixed. Of course, too, the right should be reserved

to plaintiffs to demand collation, even if the transfer be valid as an onerous donation, or if it be valid as a sale but at a low price thus giving collatable advantage to W. H. Gough. These reservations apply, of course, only to a suit against W. H. Gough. The transfer in question not being on its face a donation but a sale, and Central Lumber Company having acted on the faith of its being a sale, plaintiffs' claim against that company must fail whatever be the truth as to the value of the land in 1902 and the amount paid by W. H. Gough therefor.

With the reservations above mentioned, a rehearing is denied.