400 So.2d 653 (1981)
Succession of Mary Maude Greenlee OSTERLAND
v.
Mary O. GATES, et ux.
Nos. 81-C-0301 and 81-C-0309.
Supreme Court of Louisiana.
June 22, 1981.
*654 C. Jerre Lloyd, Camp, Carmouche, Palmer, Barsh & Hunter, Lake Charles, for plaintiff-applicant and plaintiff-respondent.
John G. McLure & Thomas C. McLure, of McLure & McLure, Alexandria, counsel for defendant-respondent and defendant-applicant.
MARCUS, Justice.
Mary Maude Greenlee Osterland died intestate[1] on February 2, 1973, leaving two daughters, Alma Osterland Fey and Mary *655 Osterland Gates. Her succession was opened and Alma Fey qualified as administratrix of the succession. Alma Fey, in her capacity as administratrix of the succession, filed an action in the succession proceeding against her sister and brother-in-law, Mary and Stanley Gates, seeking collation and repayment of debts owed to the succession. Defendants answered generally denying the allegations of the petition. The answer was subsequently amended to include a claim for collation of sums given by decedent to Alma Fey.
After trial, the judge ruled that Mary Gates was required to collate $49,890.91, and Alma Fey was required to collate $4,545.38. He further held that no collation was due from Stanley Gates. Although he did not address the issue of a $20,000 debt allegedly owed by Gates, Inc., a corporation owned by Stanley Gates, the judge observed that the debt seemed to have "long prescribed." U. S. Savings Bonds listing decedent and her daughters as co-owners were held not subject to collation. The administratrix appealed. Defendants answered the appeal.
The court of appeal affirmed the judgment of the district court except to rule that the claim to recover the $20,000 debt was properly before the court but had in fact prescribed and to order collation of the value of the U. S. Savings Bonds held by decedent's daughters.[2] The administratrix as well as Mary and Stanley Gates applied for writs to this court. We granted both applications primarily to consider whether the court of appeal was correct in ordering that the U. S. Savings Bonds were subject to collation.[3]
At trial, it was established that decedent purchased during her life a total of $56,000 in U. S. Savings Bonds listing her and Mary O. Gates as co-owners and a total of $25,000 of such bonds listing her and Mrs. Alma Osterland Fey as co-owners. The federal regulations governing bonds issued in the name of co-owners provide that when either co-owner dies, "the survivor will be recognized as the sole and absolute owner." 31 CFR § 315.62. Thus, when Mrs. Osterland died, her daughters became the sole and absolute owners of the bonds that each of them held in co-ownership with their deceased mother. The trial judge held that under the explicit holding in Free v. Bland, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962), these co-owner bonds were not subject to collation. The court of appeal recognized that under federal law the daughters were the sole owners of their bonds; however, it reversed the trial judge's denial of collation and held that "a parent cannot use survivor bonds to circumvent Louisiana's established law granting collation to their parent's succession." As this holding is contrary to Free v. Bland, supra, and Yiatchos v. Yiatchos, 376 U.S. 306, 84 S.Ct. 742, 11 L.Ed.2d 724 (1964), we must reverse that part of the judgment of the court of appeal.
In Free v. Bland, a husband used community funds to purchase U. S. Savings Bonds listing him and his wife as co-owners. Upon his wife's death, he claimed full ownership of the bonds by virtue of federal regulations. The Texas court recognized his sole ownership of the bonds but awarded reimbursement to his wife's estate by virtue of the state community property law. The Supreme Court reversed, holding that the survivorship provision under the federal regulations is a federal law that must prevail under the supremacy clause of the federal constitution if it conflicts with state law. If the state could frustrate the parties' attempt to use the bonds' survivorship provision through the simple equivalent of requiring the survivor to reimburse the estate of decedent co-owner as a matter of law, the state would have interfered directly with a legitimate exercise of the power of the federal government to borrow money. Therefore, the Court held that the state law that prohibits a married couple from taking advantage of the survivorship provisions of U. S. Savings Bonds merely because the purchase price was paid out of *656 community property must fall under the supremacy clause. However, the Court added that federal regulations were not intended to be a shield for fraud and relief would be available in case of fraud or breach of trust tantamount to fraud.
Yiatchos v. Yiatchos, supra, decided two years later, was such a case. The decedent husband purchased U. S. Savings Bonds with community funds registered in his name and made payable on his death to his brother. The Supreme Court stated that under federal regulations decedent's brother was entitled to the bonds unless decedent committed fraud or breach of trust tantamount to fraud. Fraud would be determined as a matter of federal law; however, state law would be used to determine property interests. The Court stated that bonds may not be used as a device to deprive the widow of property rights which she enjoys under state law and which would not be transferable by her husband but for the survivorship provisions of the federal bonds. The case was remanded to give the wife an opportunity to establish facts that might show fraud and to determine her community property rights under state law.
Under the survivorship provisions of the federal regulations governing co-owner bonds and the decisions in Free and Yiatchos, we conclude that both daughters are entitled to their respective co-owner bonds in full ownership without any obligation to collate unless decedent committed fraud or breach of trust tantamount to fraud. Such fraud will have taken place if it can be shown that the bonds were used to deprive the daughters of property rights which they enjoy under Louisiana law and which would not have been transferable by decedent but for the survivorship provisions of the federal regulations.
In reaching its conclusion that a parent cannot use co-owner bonds as a device to circumvent Louisiana's collation law, the court of appeal relied on Succession of Guerre, 197 So.2d 738 (La.App. 4th Cir.), writ denied, 250 La. 933, 199 So.2d 926 (1967). In Guerre, the decedent was survived by three children who, under Louisiana law, were forced heirs. A donor cannot deprive forced heirs of the portion of his estate reserved for them by law (legitime), except in cases where he has a just cause to disinherit them. La.Civ.Code art. 1495. During his life, decedent had acquired a number of federal bonds listing himself and persons other than his children as co-owners. At death, these bonds were valued at $42,779.60, whereas his other assets totaled only $8,941.35. Failure to include the bonds in the assets of his succession would have greatly reduced the legitime due his forced heirs. The court concluded that any attempt by a parent to breach the right of a forced heir to his legitime by means of converting his estate to federal co-owner bonds was a circumvention of Louisiana law of forced heirship and a wrong equivalent to a breach of trust tantamount to fraud. The court held that the co-owners were the owners of the bonds by virtue of federal law but that the forced heirs were entitled to bring an action for reduction of excessive donations impinging upon the legitime.
The instant case is clearly distinguishable from Guerre as it does not involve an impingement of the legitime; it merely involves collation. The obligation of collation is founded on the equality between children in dividing among them the succession of their parents and on the presumption that what was given to children by their parents was an advance of what they might come to expect from their succession. La.Civ.Code art. 1229. Although our law contains a presumption in favor of collation and states that children coming to the succession of their parents must collate what they have received from their parents by donations inter vivos, directly or indirectly, it does allow a parent to make a gift exempt from collation by formally expressing his will that the donation was an advantage or extra portion. La.Civ.Code arts. 1228, 1231. Thus, under Louisiana law, Mrs. Osterland could have made the bonds exempt from collation by specifying that they were to be extra portions. Decedent's use of the co-owner bonds subject to right of survivorship on the surviving co-owner under federal regulations did not deprive either daughter *657 of any property rights under Louisiana law which would not have been transferable by decedent but for the survivorship provisions of the federal regulations. Therefore, decedent did not commit fraud or a breach of trust tantamount to fraud by purchasing the co-owner bonds. Hence, neither daughter is obligated to collate her bonds or the value thereof.

OTHER ISSUES RAISED BY THE PARTIES
Plaintiff contends the courts below erred in not ordering collation of $15,000 which Mary Gates testified she received for agreeing to permit her mother to have the usufruct over the entire estate of her late husband. The record reflects that this amount was not paid to Mary Gates in cash but rather was given to her in co-owner bonds. As it appeared that this amount was included in the listing of bonds given to Mary Gates by decedent, it was unnecessary for the courts below to consider this item separately. Even assuming the $15,000 in bonds was not included in the listing, this amount is still not subject to collation as we have previously held that the co-owner bonds in this case are not subject to collation.
The 1966 United States Gift Tax Return of decedent reflects that she gave Mary Gates two savings and loan certificates valued at $10,000 each and bonds valued at $4,500. Plaintiff maintains the courts below were correct in ordering collation of the certificates but in error by failing to order collation of the bonds. Both Mary and Stanley Gates testified that the bonds were co-owner bonds listed in the name of decedent and Mary Gates and that decedent later reclaimed and cashed the bonds. Apparently, the trial judge believed this testimony and accordingly did not order collation of the bonds. We are unable to say that this finding was clearly wrong.
Plaintiff contends the courts below erred in not ordering collation of a series of checks totaling $37,000 given by decedent to Stanley Gates and Gates, Inc., a corporation solely owned by him. La.Civ.Code art. 1235 provides that an "obligation of collation is confined to [lawful] children and descendants succeeding to their fathers and mothers or other ascendant...." Stanley Gates is the son-in-law of decedent and thus is not her descendant and has no obligation to collate. Succession of Nelson v. Wiegand, 224 La. 731, 70 So.2d 665 (1953); Succession of Browne, 176 So.2d 217 (La.App. 2d Cir. 1965). Similarly, Gates, Inc., a corporation solely owned by Stanley Gates, has no obligation to collate.
Included in the checks discussed above were two checks issued to Gates, Inc. in November of 1956, each in the amount of $10,000. When these checks were received, the books of Gates, Inc. recorded the amounts as debt. In the courts below, plaintiff sought recovery of this $20,000 debt. The trial judge did not address the issue as he did not consider it properly before him; however, he noted that the debt seemed to have "long prescribed." The court of appeal ruled that the claim to recover the $20,000 debt was properly before the court but, finding no interruption by the debtor's acknowledgement, concluded that the debt had prescribed. La.Civ. Code arts. 3520, 3538. We agree. Plaintiff now argues that this amount was not debt but really a gift. Assuming this to be true, plaintiff is still not entitled to recover as we have previously held that gifts to Gates, Inc. are not subject to collation.
Plaintiff contends the courts below erred in failing to increase the award for attorney's fees. The trial judge stated that the attorneys for the succession had already been awarded $9,973.07 for handling the succession and refused to allow any additional attorney's fees. He reasoned that much of the time expended by the attorneys was for the individual benefit of their client, Alma Fey, rather than for the usual duties involved in handling a succession. The court of appeal concurred, finding that an award of additional attorney's fees was unwarranted. We agree.
Plaintiff argues that the court of appeal erred in ordering her to collate the value of *658 her bonds ($25,000) because Mary Gates did not ask in any pleading that plaintiff collate anything. First, in the trial court's judgment, it stated that the "motion of Stanley and Mary Gates that their answer filed January 5, 1977 be amended to include a claim for collation of sums given by decedent to Alma Fey is granted." In any event, the contention is moot, as we are reversing that part of the judgment of the court of appeal ordering collation of the co-owner bonds held by Mary Gates and plaintiff.
The court of appeal affirmed the trial court's award of interest from date of judicial demand on sums required to be collated by each party. Plaintiff contends that the courts below erred by not allowing interest from the date of donation. This contention is without merit. Since no collation is due for revenues of property, the full ownership of which had been donated, the court of appeal correctly affirmed the trial court's award of interest only from the date of judicial demand. Clark v. Hedden, 109 La. 147, 33 So.2d 116 (1902).
Defendants contend that plaintiff is not entitled to any award of interest because plaintiff made no judicial demand for interest in her alternative prayer for collation. The court of appeal correctly ruled that plaintiff's specific request for "interest from date of decedent's death until paid" even though demanded only in her first prayer that she be declared owner of one-half of the bonds was sufficient when coupled with her final prayer for "full, general, and equitable relief."
In her petition, plaintiff stated that she should have an undivided one-half interest in "Cemetery grave lots, in Sacred Heart Church, in or near Oakdale, Louisiana, held by defendants." Plaintiff then specifically listed the lots:
Sec. 25, Lots, 2, 3, 4, 5, 6, 7 to "Osterland Family"
Sec. 27, Lots, 1, 2, 3, 4 to A. J. Osterland
Sec. 29, Lots 1, 2 Osterland Family
Sec. 31, Lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 to Stanley Gates
In their answer, the Gates stated that: "Insofar as cemetery grave lots in Sacred Heart Church, in or near Oakdale, Louisiana, Defendants have no objection to Petitioner owning an undivided one-half (½) interest." Plaintiff correctly contends this interest in the above described lots should be part of the trial court's judgment. Hence, on remand the trial judge should render judgment accordingly.

DECREE
For the reasons assigned, that part of the judgment of the court of appeal ordering collation of the co-owner bonds is reversed; otherwise, the judgment is affirmed. The case is remanded to the district court with instructions to the trial judge to render judgment recognizing plaintiff's undivided one-half interest in the cemetery lots described above and for further proceedings in accordance with law.
NOTES
[1] A statutory testament confected on February 3, 1964, was subsequently filed in her succession proceeding together with a written declaration of nullity dated December 3, 1972. After a hearing, the purported testament was declared revoked and the property of decedent was ordered to be distributed in accordance with the rules of intestate successions.
[2] 391 So.2d 855 (La.App.3d Cir. 1980).
[3] 396 So.2d 1350 (La.1981).