542 So.2d 1102 (1989)
SUCCESSION OF Joseph Hazael GUERIN.
No. CA 88 0238.
Court of Appeal of Louisiana, First Circuit.
April 11, 1989.
*1103 Thomas Fazio, and Neil H. Mixon, Baton Rouge, for plaintiff-appellee.
C. Jerome D'Aquila, New Roads, for appellant-Sandra F. Greene.
James C. Dewey, New Roads, for defendant-appellant-John Roy Guerin.
Before COVINGTON, C.J., and LOTTINGER and FOIL, JJ.
LOTTINGER, Judge.
This is a succession proceeding in which collation is sought. From a judgment ordering defendants, John Roy Guerin, and his former wife, Sandra Fairchild Greene, to collate in kind a tract of land, as well as the fruits and revenues of the property, defendants individually appeal.

FACTS
This suit was brought by the Succession of Joseph H. Guerin against John Roy Guerin and Sandra Fairchild Greene, the former wife of John Roy Guerin. The suit seeks collation under La.Civ.Code art. 1248[1] of certain properties and their fruits and revenues that were transferred to John Roy Guerin in 1958 and 1971 during the existence of his marriage to Sandra Greene.
In 1958, the decedent transferred a 5.88 acre tract of land by act of sale to John Roy Guerin for a recited consideration of $800.00, but the trial court concluded no price was ever paid. In 1971, the decedent transferred the family farm to his son, John Roy Guerin, for $40,000.00, payable in monthly installments of $150.00 each, bearing five percent per annum interest from date of maturity. This latter transfer was represented by a promissory note.

TRIAL COURT
The instant suit is actually a sequel to a 1980 suit that attacked the 1971 transfer as a simulated sale or a donation in disguise. *1104 On appeal, this court declared the sale valid, but in a concurring opinion, one judge noted an action for collation might still lie. Guerin v. Guerin, 449 So.2d 1053 (La.App. 1st Cir.), writ denied, 450 So.2d 960 (La. 1984).
In this second suit, wherein plaintiff seeks collation, the trial court found that both transfers were "advantages" per La. Civ.Code art. 1248, and thus subject to collation.
As to the 1971 sale, the trial court found that the transfer consisted of 89.89 acres (sometimes referred to as "larger tract") and that "a realistic" value of the property (excluding the house) at the time of the sale was $800.00 an acre or a total of $71,112.00. After deducting the value of the usufruct held by the surviving spouse, the court valued the house at $9,202.56, and the lot at $433.06. The total value assigned by the court came to $80,747.62. Inasmuch as $40,000.00 is less than half of the above-assigned fair market value, the court concluded the price was a "very low price" within the meaning of La.Civ.Code art. 1248, and was therefore an "advantage" subject to collation.
Following the trial, but before post-trial briefs were submitted and a decision rendered, defendant John Guerin renounced the succession. However, the trial court opined that defendant could not avoid collation by simply renouncing the succession. The court thereupon applied La.Civ.Code art. 1237, Paragraph 2[2], in holding that defendant would have to collate whatever was necessary to make up the legitimate portion of the other heirs. The trial court further concluded that the defendants must collate "in kind," reasoning that the phrase in La.Civ.Code art. 1248, "all that is subject to collation," refers to the antecedent noun, "thing," which, in this case, is the property.
As to the 5.88 acre tract, the court found that no price was ever paid for the property and that it was worth $2,724.38 at the time of the transfer in 1958. Inasmuch as the court found the 5.88 acre tract was partitioned and sold by defendants following their divorce, the sale was not a forced alienation under La.Civ.Code art. 1271[3]. The court thereupon applied La.Civ.Code art. 1270[4], and ordered that the property's value at the time of the opening of the succession, $10,878.00, be included in the calculation of the active mass of the succession.
The court rejected defendant Sandra Greene's argument that collation does not apply to a spouse or former spouse of an heir. Citing Heirs of Dupuy v. Dupont and Wife, 11 La.Ann. 226 (1856), the trial court held that "those who derive their interest from forced heirs by operation of law may be ordered to collate," and ordered the former wife to collate in kind enough of the "larger tract" necessary to form the rightful legitime of the forced heirs. (The larger tract is still owned in indivision by both the defendants.)
Additionally, the trial court held the fruits and revenues from the "larger tract" must also be collated in accordance with *1105 La.Civ.Code art. 1515.[5] Finding that demand was not made within one year of the date of death, the court ordered, pursuant to the above-cited article, that the revenues are due only from the date of demand. The revenues include: $5,949.67 for oil and gas leases as shown by a May 31, 1984 cash receipt from an escrow bank account, and $8,266.66 representing monies from agricultural leases from 1984 through 1986.
The trial court also rejected plaintiff's motion for a partial new trial. Plaintiff contended that La.Civ.Code art. 1515 does not apply to a collation suit; alternatively, if La.Civ.Code art. 1515 were found to apply to the present suit, plaintiff urged that the court failed to recognize that demand for collation was made when the first suit was filed, October 28, 1980. Assuming that demand was not made until May 29, 1984, plaintiff argued the court erred in not finding that more than $280,000.00 in mineral royalties allegedly distributed to defendants from the escrow account on June 11, 1984, should be collated.

ASSIGNMENTS OF ERROR
Both defendants appeal.[6] Defendant John Roy Guerin alleges the trial court erred in finding that:
1) The sale to John Roy Guerin was for a "very low price" and therefore subject to collation; and
2) John Roy Guerin is obligated to collate in kind.
Defendant Sandra Greene asserts the trial court erred in finding that:
1) The undivided one-half interest of a third party in immovable property, purchased during the community of acquets and gains, is subject to collation;
2) The sale to John Roy Guerin and Sandra Fairchild Greene was for a "very low price;"
3) John Roy Guerin and Sandra Fairchild Greene are obligated to collate in kind, rather than the difference between price paid and what the court found should have been paid; and
4) The fruits and revenues are collatable.

I

JOHN ROY GUERIN'S ASSIGNMENT OF ERROR NO. 1

AND

SANDRA GREENE'S ASSIGNED ERROR NO. 2
Both defendants contend the trial court erred in valuing the 89.89 acre tract at $800.00 per acre. The trial court arrived at that amount after rejecting appraisals provided by all of the expert witnesses, and also finding that the highest and best use of the land was for a residential subdivision. Plaintiffs' expert witness, Kermit Williams, testified the property was worth $1,450.00 an acre in 1971. The court found that Williams' appraisal method was too subjective. The sales occurred between 1968 and 1971 and ranged in amount from $940.00 an acre, for a partly-developed subdivision tract, to $1,073.00, an acre for a River Road tract of land later used for industrial purposes.
Defendants relied on the testimony of their two experts from the former trial. In that suit, this court found the trial court's valuation of the property$1,000.00 an acrewas too high, but offered no value of its own because it found that, even if the property were worth $1,000.00 an acre, the sales price of $40,000.00 was not less than one-fourth of $89,890.00, and thus was not a disguised donation. Guerin v. Guerin, at 1058.
In this suit, the trial court rejected the testimony of defendants' expert witness, Stuart W. Wooddy, stating it was contradictory. *1106 Wooddy advocated the "highest and best use" was as a farm. He compared the Guerin tract to six other tracts sold from 1968 to 1971, ranging in size and cost from 33.9 acres at $423.00 an acre, to 119 acres at $1,073.00 an acre.
Defendant's other expert witness, George Platt, used the same six sales as Wooddy, as well as three sales that occurred after the subject sale, ranging from $506.00 per acre to $1,347.00 per acre. The trial court accepted Platt's sales as being comparable, but noted the appraiser failed to adjust the early sales for appreciation in value. Platt also testified the "highest and best use" of the Guerin tract was as a farm because there was a low demand for subdivisions in that area at the time, and the Guerin tract's small amount of front footage (177.1 feet) did not lend itself to subdivision development. The tract was 584.2 feet wide, but was narrowed to 177.1 feet in the front as a result of a usufruct bequeathed to the deceased's 66-year-old surviving spouse, and an adjacent tract transferred in 1948 to J.W. Guerin.
In determining the market value of any piece of land, the court should look to the "highest and best use" of the land. Pointe Coupee Electric Membership Corporation v. Mounger, 447 So.2d 1104 (La. App. 1st Cir.1984). "Highest and best use" is determined by the most profitable use to which the property may be put in the foreseeable future, excluding remote and speculative value. Prentice Oil and Gas Company v. Caldwell, 355 So.2d 1327 (La.App. 1st Cir.1977), writ denied, 358 So.2d 640 (La.1978).
In Central Louisiana Electric Co. v. Harang, 131 So.2d 398, 401 (La.App. 1st Cir.1961), this court said:
It is common knowledge that any tract of land wheresoever situated may be physically divided into residential plots or lots and subdivided irrespective of the demand for such property. However, potential subdivision use, to serve as the basis for establishing market value in an expropriation proceeding, must be shown to be reasonably prospective, as distinguished from remotely prospective, so as to remove said potential use or classification from the realm of guesswork, speculation and conjecture. If such potential future use is shown within the reasonably near future the owner is entitled to compensation on the basis of best and highest use for subdivision purposes even though the property affected be not in use for such purpose at the time of taking. However, if the potential (as, indeed, there is a potential in every case no matter how remote) is so indefinite or remote as to be predicated solely upon speculation and conjecture, it may not serve as the criteria of market value.
Plaintiff's expert witness attested to subdivision developments taking place at the time of the Guerin sale and in the vicinity of the Guerin tract. Although defendants' expert witnesses both said subdivision development in that area was slow in 1971, the trial court is granted much discretion in evaluating the testimony of experts. This discretion applies in any case where the value of real estate is at issue. Successions of Mack, 413 So.2d 642 (La.App. 1st Cir.1982). This deference is warranted because the trial court has superior knowledge in the realm of local property conditions. State v. Ransome, 392 So.2d 490 (La.App. 1st Cir.1980).
In addition, we observe that while the usufruct occupies 250 feet in front footage, it is only 175 feet deep. If a road were built along the side and rear of the J.W. Guerin tract and rear of the homesite, it would facilitate residential development of the remaining property to a depth of 7,505 feet and a width of 534.2 feet. (See Appendix No. 1.) Defendants' own witness, Mr. Platt, stated that the Jarreau tract, which sold for $610.00 an acre two years earlier, is very similar in terrain to the Guerin tract and is also nearby. However, its width is limited to 192 feet in contrast with a potential width of 534.2 feet on the Guerin tract. Thus, based on the above findings and legal precepts we can find no manifest error in the trial court's valuation of the Guerin tract at $800.00 an acre.

*1107 II

GUERIN'S ASSIGNMENT OF ERROR NO. 2

AND

GREENE'S ASSIGNED ERROR NO. 3
As was noted above, defendant John Roy Guerin has renounced the succession, and, under La.Civ.Code art. 1237, is entitled to keep the property unless the remainder of the estate is less than the legitimate portion of the other children. If so, the heir is obligated to collate up to the sum necessary to complete such legitimate portion.
The trial court concluded that defendant, John Roy Guerrin, cannot now defeat an action in collation by renouncing the succession. We can find no code article limiting the time within which an heir must renounce the succession. The only obstacle would be if the defendant had tacitly accepted the succession. This issue was not raised on appeal. Thus, we must conclude defendant is entitled to renounce the succession. See Estate of Schwegmann v. Schwegmann, 344 So.2d 13 (La.App. 4th Cir.1977).
Defendants urge the trial court erred by ordering collation "in kind." They contend that, when La.Civ.Code art. 1248 dictates that "all that" is subject to collation, it is referring to the "advantage" and not the entire item for which a low price was paid. We must agree. The first sentence of the pertinent article states "the advantage" is subject to collation. What follows are examples of "advantages." One such example of an advantage is a low price paid for land, the advantage being the difference between the market value of the land and the low price paid. The land for which the low price was paid is not the advantage. Thus, when the article states, "all that" is subject to collation, it is referring to the examples of advantages.
Although the trial court relies on Succession of Negrotto, 411 So.2d 675 (La.App. 4th Cir.1982), wherein collation in kind was ordered, we agree with defendants that the case is distinguishable from the present one insofar as the transfer was found to be a disguised donation and thus a nullity.
Conversely, we ascribe to the view of the court in Steen v. Louisiana Central Lumber Company, 2 La.App. 39 (2d Cir.1925), a case also cited by defendants. In Steen, the court distinguished La.Civ.Code art. 1248 from La.Civ.Code art. 2444,[7] by stating that the former article, unlike the latter article, does not prescribe a ground for nullity or collation of the thing sold, but rather allows for collation of the "advantage," i.e. the difference between the true value and the price paid.
Other jurisprudential support is found in Laycock v. Bird, 13 La.Ann. 173 (1858), wherein the court ordered the collation of the difference between the real value of the property and the price paid by the heir.
Plaintiff cites 3 Planiol, Traite' Elementaire De Droit Civil, No. 2268 (11th Ed. 1938), wherein Planiol noted that collation by taking less is possible only "when the property subject to collation is inferior to the inheritance share. If it is larger, the heir must return the surplus in kind...." We find this excerpt to be inapplicable because defendant does not desire to take less; he has renounced the succession. For that reason, we hold La.Civ.Code art. 1237 is the applicable code article. Accordingly, defendants must collate whatever "sum" of money is needed to complete the legitime of the remaining children with credit given for the price paid for the property. We therefore remand the case to the trial court to determine the disposable portion in accordance with La.Civ.Code art. 1502 by fictitiously adding to the active mass the value of the property at the time of the donor's death, taking into consideration any potential value which the land may have as of that date.

*1108 III

SANDRA GREENE'S ASSIGNMENT OF ERROR NO. 1
Defendant Sandra Greene argues that she, as a former spouse, is not obligated to collate property acquired during the marriage. Citing La.Civ.Code arts. 1227, 1229 and 1235,[8] she contends collation applies only to forced heirs so as to prevent any one forced heir from receiving an unequal share of the succession. For jurisprudential support defendant relies on Osterland v. Gates, 400 So.2d 653 (La.1981) and Succession of Browne, 176 So.2d 217 (La.App. 2d Cir.), writ denied, 178 So.2d 656 (La.1965).
We find both of these cases factually dissimilar from the case sub judice. In Osterland, the money was given to the son-in-law and his solely-owned corporation. In Succession of Browne, the gift was once again confined to the son-in-law. The court also noted the money was placed in a special account in his name and the money was expended for the sole benefit of the testatrix-donor.
For cases more factually similar, the trial court and plaintiff rely on Heirs of Dupuy v. Dupont and Wife, supra, and Lauderdale v. Guin, 174 So. 198 (La.App. 2d Cir. 1937) which held that transfers made jointly to the heir and spouse are subject to attack. In Heirs of Dupuy v. Dupont and Wife, the court opined that the sale made to the daughter and husband produces in substance the same effect as if made to the wife alone. The Lauderdale court likewise viewed the sale to the daughter and son-in-law as the same as one from parent to child within the statute permitting forced heirs to attack donations in disguise if the price paid was below one-fourth of the value of the immovable at the time of the sale.
We find further support in 3 Planiol Traite' Elementaire De Droit Civil, No. 2226 (11th Ed.1938), regarding gratuity given to the spouse of the eligible heir:
There is never any duty to return such a gratuity (Art. 849). Yet the eligible heir might have benefited personally from it, under the existing matrimonial agreement. For instance, in a statutory community, he receives one half of any donation in personalty made to his spouse. However, this is not the result of the donation, but of the marriage contract.
Conversely, the donee must return the whole donation made to him, although under their matrimonial agreement his spouse actually acquired one half of it. Not the consort, only the heir is the donee.
If the donation was made jointly to both spouses, the prospective heir of the donor, having received only one-half, owes the return only of one-half.
In the instant case, the subject properties were transferred to John Roy Guerin, who, as noted above, has opted to keep the property by renouncing the succession. Thus, in accordance with the above precepts, when the property is fictitiously added to the active mass to determine the disposable portion the value of all of the property, not just John Roy's half interest, must be considered. This is not to say, however, that John Roy will not have a claim for reimbursement against Sandra Greene upon partitioning the community. But we are not asked to decide that issue today.

*1109 IV

SANDRA GREENE'S ASSIGNMENT OF ERROR NO. 4
Defendant Sandra Greene urges the fruits and revenues of the disputed property should not be subject to collation because there is no codal provision which allows for "collation" of fruits and revenues. She submits that La.Civ.Code art. 1515 provides for the return of fruits and revenues, but she points out the article is concerned solely with reduction of donations made in excess of the disposable portion, and thus the trial court erred in applying that article to a suit for collation. We agree.
Although the jurisprudence has applied La.Civ.Code art. 1515 to collation of fruits and revenues, these cases did not involve renunciation. See Clark v. Hedden, 109 La. 147, 33 So. 116 (1902), and Succession of Weber, 110 La. 674, 34 So. 731 (1901). In the case sub judice, the heir has elected to keep the property which includes the fruits and revenues, which will, in turn, be reflected in the value of the property for purposes of calculating the disposable portion.

CONCLUSION
Based on the above and foregoing reasons, we find that John Roy Guerin paid a very low price for both tracts of land, thus subjecting the advantage to collation. Inasmuch as John Roy has elected to renounce the succession and keep the property, the disposable portion of the succession must be calculated to determine if he has received an amount in excess of that portion. The disposable portion, should reflect the value of all of the property at the time of the decedent's death including prospective fruits and revenues. Credit should also be given for the money defendant paid for the property. Accordingly, the case is remanded for further proceedings in compliance with the views expressed herein. Appellee is to pay all costs.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
*1110 
NOTES
[1] La.Civ.Code art. 1248 provides:

The advantage which a father bestows upon his son, though in any other manner than by donation or legacy, is likewise subject to collation. Thus, when a father has sold a thing to his son at a very low price, or has paid for him the price of some purchase, for [or] has spent money to improve his son's estate, all that is subject to collation.
[2] La.Civ.Code art. 1237, Paragraph 2 provides:

If, however, the remaining amount of the inheritance should not be sufficient for the legitimate portion of the other children, including in the succession of the deceased the property which the person renouncing would have collated, had he become heir, he shall then be obliged to collate up to the sum necessary to complete such legitimate portion.
[3] La.Civ.Code art. 1271 provides:

But if the donee has been forced to alienate the immovable property, he shall be obliged to collate by taking less the price he has received from this sale and no more.
As, for example, if the donee shall be obliged to submit to a sale of the immovable for some object of public utility, or to discharge a mortgage imposed by the donor, or because the immovable was held in common with another person who has prayed for the sale in order to obtain a partition of it.
[4] La.Civ.Code art. 1270 provides:

If the donee has voluntarily alienated the immovable property which has been given him, or if he has permitted it to be seized and sold for the payment of his debts, or if it has been destroyed by his fault or negligence, he shall not be the less bound to make the collation of it, according to the value which the immovable would have had at the time of the opening of the succession, deducting expenses, as is provided in the foregoing article.
[5] La.Civ.Code art. 1515 provides:

The donee restores the fruits of what exceeds the disposable portion only from the day of the donor's decease, if the demand of the reduction was made within the year; otherwise from the day of the demand.
[6] In this assignment of error, neither defendant complains of the actions of the trial court as regards the 5.88 acre tract.
[7] La.Civ.Code art. 2444 provides:

The sales of immovable property made by parents to their children, may be attacked by the forced heirs, as containing a donation in disguise, if the latter can prove that no price has been paid, or that the price was below one-fourth of the real value of the immovable sold, at the time of the sale.
[8] La.Civ.Code art. 1227 provides:

The collation of goods is the supposed or real return to the mass of the succession which an heir makes of property which he received in advance of his share or otherwise, in order that such property may be divided together with the other effects of the succession.
La.Civ.Code art. 1229 provides:
The obligation of collating is founded on the equality which must be naturally observed between children and other lawful descendants, who divide among them the succession of their father, mother and other ascendants; and also on the presumption that what was given or bequeathed to children by their ascendants was so disposed of in advance of what they might one day expect from their succession.
La.Civ.Code art. 1235 provides:
The obligation of collating is confined to children or descendants succeeding to their fathers and mothers or other ascendants, whether ab intestato or by virtue of a testament.
Therefore this collation can not be demanded by any other heir, nor even by the legatees or creditors of the succession to which the collation is due.