BROWN, Judge.
Walter E. Kotz, Sr. died intestate at his domicile in Ouachita Parish on June 7, 1983. His sole survivors and heirs were his major children, Walter E. Kotz, II and Swansea Edith Kotz.
On July 1, 1983, Swansea Kotz filed a petition to be appointed administratrix of her father’s succession and attached a detailed descriptive list of assets valued at $139,710.12. The court granted the appointment on July 5, 1983. On July 18, 1983, Walter E. Kotz, II filed a petition to remove his sister as succession administra-trix. Thereafter, on July 19, 1984, by joint stipulation, Walter’s rule was withdrawn and the court appointed both brother and sister co-administrators of the succession.
On January 24, 1986, Walter E. Kotz, II instituted this action against his sister to amend the detailed descriptive list filed in July of 1983 to include additional assets valued at $228,464.14. Walter alleged that these assets were wrongfully in the possession of his sister and should be returned to the estate. Alternatively, if these assets were gifts then he claimed to be entitled to either a collation of all such donations or a reduction for excessive donations. Walter sought other relief in his petition, but those matters are not a part of this appeal.
Swansea Edith Kotz was made defendant in the action filed by her brother. Both parties agreed on the inclusion of certain items of property and presented evidence as to other contested items. Without explaining its reasons, the trial court rendered judgment, and only defendant has appealed from a part of that judgment. We affirm in part, reverse in part, and remand.
FACTS
Decedent was 67 years old at death and resided in Monroe, Louisiana. Decedent’s daughter, Swansea Edith Kotz, was married to Ray Davidson from 1976 until 1982 when the marriage ended in divorce. Ms. Kotz testified that she physically separated prior to 1982 and began living with decedent in either 1980 or 1981.
Ms. Kotz returned to her occupation as a school teacher in January of 1982. In November of 1982 Ms. Kotz and her former husband sought relief in bankruptcy court. She testified that due to the anticipation of bankruptcy her.attorney advised that she not enter into any contracts, acquire property, or maintain bank accounts following her separation. As a result of this advice, she deposited her paycheck into one of decedent’s bank accounts.
DISCUSSION
Ms. Kotz claims that the trial court committed error by including certain items in decedent’s succession and in requiring collation of debts assumed by decedent on behalf of Ms. Kotz and her former husband, Ray Davidson.
COLLATION OF DEBTS GUARANTEED BY DECEDENT
Ms. Kotz’s first Issue for Review is that the trial court erred by ordering collation of debts assumed and paid by decedent on behalf of Ray Davidson and Swansea Kotz (Davidson) even though they were discharged in bankruptcy. She contends that collation would force repayment of an obligation discharged under Chapter 11 of Title 11, United States Code, an effect repugnant to the Bankruptcy Law. By analogy, she cites Free v. Bland, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962) and Yiatchos v. Yiatchos, 376 U.S. 306, 84 S.Ct. 742, 11 L.Ed.2d 724 (1964), for the proposition that state law must yield to federal bankruptcy law as required by the Supremacy Clause of Article VI, U.S. Constitution.
Alternatively she contends that if required to collate, then only one-half belonged to her. She claims that one-half belonged to her ex-husband who is not a forced heir and not subject to collation.
Walter responded by arguing that collation is owed to the estate, not to the deceased, so that the civil obligation of repayment of these debts, discharged in bankruptcy, is not what is being enforced; rather, it is the obligation imposed by law to *1201 enforce equality between the heirs. He further argues that collation is due for the entire value of the debts because Ms. Kotz received an advantage to the full value.
LSA-C.C. Art. 1227 defines collation:
The collation of goods is the supposed or real return to the mass of the succession which an heir makes of property which he received in advance of his share or otherwise, in order that such property may be divided together with the other effects of the succession.
The reasons for collation are expressed in LSA-C.C. Art. 1229:
The obligation of collating is founded on the equality which must be naturally observed between children and other lawful descendants, who divide among them the succession of their father, mother and other ascendants; and also on the presumption that what was given or bequeathed to children by their ascendants was so disposed of in advance of what they might one day expect from their succession.
Collation may be either in kind or by taking less. In kind is when the object or property is returned to the succession while taking less diminishes the portion the do-nee inherits. LSA-C.C. Arts. 1251-1253. On the issue of collation of debts the jurisprudence of Louisiana has held that debts are as much collatable as gifts. Furthermore, in the situation in which a child owes money to a third person and this obligation is assumed and paid by the parent, the amount of the debt must be collated by the heir in the parent’s succession. Succession of Toumillon, 15 La.Ann. 263 (1860); Succession of Couder, 46 La.Ann. 907 (1894); Succession of Riggio, 468 So.2d 1279 (La. App. 1st Cir.1985); 34 La.L.Rev. 782, 799; and 26 Tul.L.Rev. 219 (1952).
The courts of this state have long held, albeit under predecessor federal law provisions [1], that discharge of debts in bankruptcy will not discharge the obligation of an heir to collate. The court in Succession of Cucullu, 9 La.Ann. 96 (1854) explained that such a holding would be “subversive” of the principles of what are today LSA-C.C. Arts. 1229-1288:
Thus, it is obvious from these articles that appellant’s obligation cannot be viewed as a debt reached by the bankrupt act; it is nothing more than the receipt of his share in advance.
The purpose of establishing equality among heirs would be compromised if an insolvent heir is allowed to receive his full share without having to account for a debt to his parent. Comment, Some Aspects of Collation, 34 La.L.Rev. 782, 799, nn. 108 & 109 (1974), and the authorities cited therein.
Thus finding that bankruptcy does not discharge the obligation to collate we turn to the further contention that if Ms. Kotz is required to collate, whether the amount should be one-half or the full value of the loans or advances guaranteed by decedent. For jurisprudential support, Ms. Kotz relies on Osterland v. Gates, 400 So.2d 653 (La.1981), and Succession of Browne, 176 So.2d 217 (La.App. 2d Cir. 1965), writ denied, 178 So.2d 656 (La.1965).
These cases are factually dissimilar from the case sub judice. In Osterland, the money was given to the son-in-law and his solely-owned corporation. In Succession of Browne, the gift was once again confined to the son-in-law and placed in a special account in his name for the sole benefit of the testatrix-donor.
Cases more factually similar are relied on by plaintiff in support of his position. See Heirs of Dupuy v. Dupont and Wife, 11 La.Ann. 226 (La.1856); Lauderdale v. Guin, 174 So. 198 (La.App. 2d Cir.1937); and Succession of Guerin, 542 So.2d 1102 (La.App. 1st Cir.1989). In Heirs of Dupuy v. Dupont and Wife, the court found that a sale made to the daughter and husband had the same effect as if made to the wife alone. The Lauderdale court likewise viewed a donation in disguise to a daughter and son-in-law as being made fully to the child of the donor. In Succession of Gue-rin, a suit was brought against decedent’s son and the son’s former wife for collation *1202 of properties transferred during their marriage. After determining that the son must collate whatever sum was needed to complete the legitime, the Guerin court wrote:
In the instant case, the subject properties were transferred to John Roy Gue-rin, who, as noted above, has opted to keep the property by renouncing the succession. Thus, in accordance with the above precepts, when the property is fictitiously added to the active mass to determine the disposable portion the value of all of the property, not just John Roy’s half interest, must be considered. This is not to say, however, that John Roy will not have a claim for reimbursement against Sandra Greene upon partitioning the community. But we are not asked to decide that issue today.[2]
Further, this approach is in accord with view expressed in 3 Planiol Traite’ Elem-entaire De Droit Civil, No. 2226 (11th Ed.1938), regarding gratuity given to the spouse of the eligible heir:
There is never any duty to return such a gratuity (Art. 849). Yet the eligible heir might have benefited personally from it, under the existing matrimonial agreement. For instance, in a statutory community, he receives one half of any donation in personalty made to his spouse. However, this is not the result of the donation, but of the marriage contract.
Conversely, the donee must return the whole donation made to him, although under their matrimonial agreement his spouse actually acquired one half of it. Not the consort, only the heir is the donee.
If the donation- was made jointly to both spouses, the prospective heir of the donor, having received only one-half, owes the return only of one-half.
In the instant case, Ms. Kotz testified that the debts were for the benefit of her husband’s farming operation. She also testified that her father and husband were partners in the farming venture. Unlike the Osterland and Succession of Browne defendants, she was unable to produce any evidence that the debts were guaranteed to her husband individually or the existence of the alleged partnership. Other evidence failed to corroborate her contentions.
The trial judge heard this testimony, but found that the debts were collatable. Implicitly, he must have rejected Ms. Kotz’s testimony on this issue and found that there was no evidence to support the contentions that the guaranty of the debt was to a partnership or to Ray Davidson individually. Obviously, the trial court found that the guaranty was solely for the benefit of Ms. Kotz. On this record, we cannot say that the court was manifestly erroneous, or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989).
However, the trial court’s determination of the amount to be collated is not supported by the record. The trial court found the amount to include a $75,000 guaranty of a note of Ray and Swansea Davidson to the Ouachita National Bank, $26,533 loan to Ray Davidson and Swansea Davidson during the years 1978-81 and cash payments of $51,819.82 to the Ouachi-ta National Bank by decedent on a note April 5, 1983.
The continuing guaranty of $75,000 referred to by the trial court does not appear to be a separate debt. The guaranty agreement was not introduced into evidence and based upon the testimony the trial court was clearly wrong in ordering the inclusion of this item. In addition there is nothing in the record to support advances of $26,500 to the Davidsons by the decedent for the years 1978-81. There was some vague testimony about loans during this period but no amounts were specified or documents introduced in support thereof. Therefore, the only loans involved herein were those testified to by Wayman Mardis, Vice-President Ouachita National *1203 Bank. Mr. Mardis testified that there was an original note in the amount of $78,-578.56 in the name of the husband and wife dated December 1, 1981 and taken over by decedent March 8,1982 pursuant to a guaranty agreement. In March a new note was issued in the amount of $82,128.59. On June 29, 1982 decedent made a payment of $40,000 from his account at the Ouachita National Bank. No further payment was made on the note until September 12, 1983 which was almost three months after decedent’s death. At that time $50,281.74 was paid by Ms. Kotz from a savings account in decedent’s name at Ouachita National Bank.
In this case the amount to be included in the succession should be the $40,000 payment of June 29, 1982 and the $50,281.74 payment on September 12, 1983. Therefore, the total is $90,281.74.
ITEMS IMPROPERLY REMOVED FROM ESTATE
BANK ACCOUNT #4101073 IN THE NAME OF DECEDENT AT SECURITY BANK.
On December 15, 1982 decedent opened this account at Security Bank in his name with a deposit of $65,000. The deposit slip indicated that the funds came from Ouachita National Bank (ONB). Although the account was in the name of the decedent, he authorized his daughter to sign checks. On January 4,1984 decedent made a withdrawal of $50,000. Thereafter, Ms. Kotz withdrew $2,500 on March 21 and $2,500 on May 20, 1983. Decedent died on June 7, 1983 and the bank records show that Ms. Kotz withdrew the balance of the account on that date in the sum of $11,-010.06. She deposited this balance in a new account opened in her name. Other than the $65,000 initially deposited and earned interest no other deposits were made into this account.
Ms. Kotz testified that she withdrew the two $2,500 entries at the request of her father, but was vague on this point and offered no supporting evidence. She testified she withdrew the balance on June 2, 1983, although the bank record shows June 7, to pay the expenses expected by her father’s death.
The trial court’s factual determination is to be given great weight by a reviewing court and should not be reversed unless manifestly erroneous or clearly wrong. Rosell v. Esco, 549 So.2d 840 (La.1989). In this instance the trial court concluded that the money was improperly removed and should be returned to the succession. This conclusion is not manifestly wrong. However, the amount that should be returned to the succession would be $16,010.06 and not $22,000.00. The record demonstrates that Ms. Kotz withdrew $2,500 on March 21, $2,500 on May 20 and $11,010.06 on June 7, 1983. The record does not indicate how the trial court concluded that the sum was $22,000. Therefore, the decision by the trial court that the money from this account should be included in the succession of decedent is affirmed except that the amount is reduced to $16,010.06.
Ms. Kotz alleges that she used this money to pay decedent’s debts in the amount of $7,329.85. Ms. Kotz asserts that this was her purpose in withdrawing the balance from this Security Bank account. In support of her argument she introduced a list showing payments of bills which she alleged were incurred by the decedent. However, the actual bills and cancelled checks were not included in the record. In light of the poor presentation of this matter, we will remand to the trial court to determine if Ms. Kotz is entitled to such a credit.
THE AUDI AUTOMOBILE
A Certificate of Title was issued by the Department of Public Safety in decedent’s name for this 1982 Audi automobile. Decedent provided insurance and was solely liable on the promissory note secured by a lien on this vehicle. A Certificate of Title constitutes prima facie proof of ownership, but other evidence is admissible to show a different ownership. Ford Motor Credit Company v. Soileau, 323 So.2d 221 (La.App. 3d Cir.1975).
The vehicle was purchased on July 2, 1982. Ms. Kotz testified that the vehicle was in her father’s name for convenience *1204 due to the anticipation of bankruptcy. The vehicle was not listed in the bankruptcy proceedings filed in November of 1982 by Ms. Kotz. Decedent’s brother testified that the Audi was bought to replace decedent’s Mercedes which was wrecked by Ms. Kotz.
Ms. Kotz testified that her money was used to purchase the Audi. The car was paid initially from the account of decedent at ONB and then monthly from decedent’s other account at Security Bank. The initial payment was $4,000. Ms. Kotz did produce deposit slips showing that her paycheck was placed into this Security Bank account. After the death of her father, Ms. Kotz made these car payments from her newly opened account.
This is a factual determination and from the record in this case we cannot say that the trial court was clearly wrong in its decision to include the Audi automobile in the succession property. However, we remand the case for the trial court to determine if Ms. Kotz can prove what separate funds were used to pay for this vehicle. Ms. Kotz is entitled to credit for payments from her separate funds, particularly after the death of her father.
BANK ACCOUNT # 1501682 AT SECURITY BANK
The trial court included this item in the amount of $669.32 less any amounts which Ms. Kotz could later show were deposited by her from her personal funds. Although this account was in the name of the decedent, Ms. Kotz did make deposits of her paycheck as a teacher. The trial court was certainly correct in recognizing that this account should be included in the detailed descriptive list, but allowing Ms. Kotz appropriate credit. However, since this account was used to pay for the 1982 Audi, Ms. Kotz is not entitled to claim double credit as per our ruling concerning this automobile.
CERTIFICATE OF DEPOSIT IN OUA-CHITA NATIONAL BANK IN THE AMOUNT OF $15,000
The history of this account shows that it was initially opened in the name of Ms. Kotz and her ex-husband, Ray Davidson. Ms. Kotz testified that the money for this C.D. came from a personal injury settlement in connection with an automobile accident.[3] Ms. Kotz testified to receiving a $30,000 settlement from that accident. Ms. Kotz further testified that when the C.D. first matured she changed the account name by removing her ex-husband and adding her father. The C.D. was then renewed several times in both Ms. Kotz’s and decedent’s names. The C.D. was given as collateral for one of Ms. Kotz’s promissory notes at the Ouachita National Bank and ultimately applied to satisfy that note.
Under these circumstances, Ms. Kotz’s testimony, supported by the documentary evidence, is convincing that the trial court was clearly wrong to include one-half of this item in the succession. Therefore, the trial court’s judgment is reversed as it applies to the account.
DECREE
The judgment of the trial court is amended as follows:
1) Defendant is ordered to collate loans assumed and paid by decedent in the amount of $90,281.74.
2) Defendant is ordered to return the sum of $16,010.06 withdrawn from Security Bank Account # 4101073 subject to credit for any provable debts paid on behalf of decedent’s estate.
3) Defendant is ordered to list the 1982 Audi automobile in the succession subject to any amounts proven paid on said vehicle from defendant’s personal funds.
4) The trial court’s decision concerning the inclusion of the Certificate of Deposit in Ouachita National Bank in the amount of $15,000 is reversed.
With respect to the issue of proper credit, the case is remanded for further proceedings. In all other aspects not mentioned herein, the judgment of the trial court is affirmed. Costs of this appeal are *1205 to be borne equally by appellant and appel-lee.
REVERSED IN PART, AMENDED IN PART AND REMANDED.

. Succession of Cucullu interpreted the effect of an Act of Congress entitled "An act to establish a uniform system of bankruptcy throughout the United States,” approved August 19, 1841.

. Like the Guerin court, we do not decide the issue of Swansea’s possible claim against her former husband, Ray Davidson, for reimbursement. The record, however, contains reference to a partition of their community as part of their bankruptcy plan of reorganization which may preclude such a claim between these parties.

. Presumably this was the accident where she wrecked her father’s Mercedes.