511 So.2d 1250 (1987)
AMERICAN HEALTH & LIFE INSURANCE COMPANY, Plaintiff/Appellee,
v.
Monica Karen BINFORD, Albritton Watson, Defendants/Appellants.
No. 18821-CA.
Court of Appeal of Louisiana, Second Circuit.
August 19, 1987.
*1251 Dawkins, Coyle & Carter by Michael S. Coyle, Ruston, for plaintiff-appellee.
Truett West, Cusimano & Aswell by Harold Aswell, Rabun & McCallum by Jay McCallum, Farmerville, for defendants-appellants.
Before HALL, JASPER E. JONES and LINDSAY, JJ.
LINDSAY, Judge.
This is a concursus proceeding in which the ownership of the proceeds of an insurance policy in the amount of $20,000 on the life of the deceased, Jerry L. Albritton, is at issue. On March 12, 1986, American Health and Life Insurance Company instituted this concursus proceeding against the beneficiary named in the policy, Monica Karen Binford Albritton Watson, individually, and also in her capacity as the natural tutrix of her minor daughters, Melinda Kristen and Ann Marie Albritton. Also named as a defendant was Loy Albritton as *1252 the tutor of Ashley Lane Albritton, a minor child born to Mr. Albritton by a marriage prior to his marriage with Ms. Watson. The concursus proceeding was instituted because of conflicting claims to the proceeds of the policy of insurance.
The trial court found that the insurance policy in question was classified as "miscellaneous" insurance under the provisions of LSA-R.S. 22:6(14) and therefore, the forced heirs of the deceased were to receive the benefits of the policy, rather than the named beneficiary, Ms. Watson. The court then held that because it was Mr. Albritton's intent when he obtained the insurance policy to provide for payment of a mortgage on the family home, the proceeds of the policy were to be applied to the satisfaction of that mortgage for the benefit of the deceased insured's forced heirs and the remaining proceeds, if any, were to be paid to the named beneficiary, Ms. Watson. From that judgment, Ms. Watson has appealed. For the following reasons we reverse the trial court judgment.

FACTS
This case was tried on the basis of stipulations entered into by all parties. Hence, the facts are not in dispute.
Plaintiff insurance company issued a policy of insurance in the amount of $20,000 to Jerry L. Albritton, the owner of the policy. At the time of the application and issuance of the policy, Mr. Albritton was married to appellant, Monica Karen Binford Albritton Watson. Of this marriage, two children were born, Melinda Kristen and Ann Marie Albritton. Mr. Albritton was also the father of Ashley Lane Albritton, a child born to Mr. Albritton during a prior marriage.
When the policy was issued, Ms. Watson was named as beneficiary. In the space provided for the name of the beneficiary, the name "Monica Karen Albritton" was written. In the space provided for the relationship of the beneficiary to the insured, the word "wife" was written.
The policy issued to Jerry Albritton provides that it will pay "for loss resulting directly from accidental bodily injury." It further provides that a certain sum of money will be paid if the insured suffers an accidental bodily injury which results in loss of life; it also provides that lump sum payments will be made in the event of an accident resulting in certain dismemberments or loss of sight.
Application for this accidental death policy was made contemporaneously with the mortgage on the family home in which Mr. Albritton and his wife, Monica, then resided. The insurance premium of $4.00 per month was included in the insured's monthly payment to the mortgagee. The application was handled by the mortgagee as agent for the insurer. The named beneficiary was the insured's wife, who was also the comaker of the note secured by the mortgage.
Mr. Albritton and Ms. Watson separated and were later divorced. Ms. Watson later remarried. In the community property settlement, Mr. Albritton and Ms. Watson agreed that they would remain as owners in indivision of the house and the property mortgaged with it. They further agreed that they would sell the house and divide the proceeds. However, they could not sell the house. Later, Mr. Albritton purchased his ex-wife's one-half interest in the family home for the sum of $8,000, plus the assumption by him of the unpaid principal balance of $20,629.82. The insurance policy in question remained in effect and premiums were paid as before. Mr. Albritton did not change the named beneficiary in the policy. The named beneficiary remained "Monica Karen Albritton."
Following the occurrance of these events, Mr. Albritton died as a result of an accidental electrocution which occurred while he was working at his job. After an investigation by the insurance company, it was determined that his death was the result of an accident and therefore benefits were payable pursuant to the terms of this policy.
Ms. Watson made a claim under the policy for the stated benefits. Plaintiff considered Ms. Watson to be the proper beneficiary under the policy. However, because a competing claim was filed by the tutor of *1253 Ashley Albritton, this concursus proceeding was filed in which all parties who may have an interest in the proceeds of the policy were joined.

DISCUSSION
The trial judge began his opinion by deciding that the insurance policy in question did not fall within the definition of life insurance or health and accident insurance, but was more properly categorized as "miscellaneous" insurance. We find that the policy in question was a policy of life insurance.
Life insurance is defined by LSA-R.S. 22:6(1), as follows:
(1) Life. Insurance on human lives and insurances appertaining thereto or connected therewith. For the purposes of this Code the transacting of life insurance includes the granting of annuity or survivorship benefits; additional benefits in the event of death by accident; additional benefits in the event of total and permanent disability of the insured; and optional modes of settlement of proceeds.
The policy in question provides benefits upon the death of the insured only if the death is caused by an accidental bodily injury. Although this condition of the policy requiring that the insured's death must result from an accidental bodily injury is a limiting factor, nevertheless, it does not prevent the policy from being a life insurance policy. Likewise, the inclusion in the policy of coverage for dismemberment or loss of eyesight does not place this policy outside the statutory definition of life insurance. Life insurance is insurance on human lives and for insurances appertaining thereto or connected therewith. The policy at issue in this case provides for insurance on human lives; specifically, it provides benefits for lives lost through accidental bodily injury. It also contains insurances appertaining thereto or connected therewith; namely, payment for dismemberment or blindness resulting from accidental bodily injury. Thus, the policy in this case is a policy of life insurance.
Next, we address the issue of whether the forced heirs have any claim to the proceeds of this life insurance policy. It is well settled in Louisiana that life insurance proceeds, if payable to a named beneficiary other than the estate of the insured, are not considered to be a part of the estate of the insured. The insurance proceeds do not come into existence during the life of the insured, never belong to him, and are passed by virtue of the contractual agreement between the insured and the insurer to the named beneficiary. Life insurance proceeds are not subject to the Civil Code Articles relating to donations inter vivos or mortis causa, nor are they subject to community claims or the laws regarding forced heirship. T.L. James and Company, Inc. v. Montgomery, 332 So.2d 834 (La.1976). The principle that life insurance proceeds must be paid to the named beneficiary to the exclusion of forced heirs is set forth in LSA-R.S. 22:647(A), which provides:
A. The lawful beneficiary, assignee, or payee, including the insured's estate, of a life insurance policy or endowment policy, heretofore or hereafter effected shall be entitled to the proceeds and avails of the policy against the creditors and representatives of the insured and of the person effecting the policy or the estate of either, and against the heirs and legatees of either such person, and such proceeds and avails shall also be exempt from all liability for any debt of such beneficiary, payee, or assignee or estate, existing at the time the proceeds or avails are made available for his own use.
Therefore, the forced heirs herein are not entitled to the proceeds of the insurance policy, provided that Ms. Watson is the sole beneficiary.
In this case, the insurance contract specifically lists as the beneficiary the person now known as Ms. Watson. It is of no moment that she remarried after her divorce from Mr. Albritton. There is no indication that Mr. Albritton made any attempt to change the beneficiary under the policy.
The argument is made that since the policy describes the beneficiary as "wife" *1254 and Ms. Watson's status as wife of Mr. Albritton was terminated prior to Mr. Albritton's death, there is no longer a wife who can be the beneficiary. However, the description in the policy of Ms. Watson as wife is merely the showing of a relationship in existence at the time of the execution of the contract. The termination of the relationship has no automatic effect on the provisions of the insurance policy. The contract of insurance in question gives no hint of any intent to make one other than Ms. Watson the beneficiary. Consequently, we find Ms. Watson to be the sole beneficiary. See Standard Life Ins. Co. of the South v. Franks, infra.
It is also argued that Ms. Watson relinquished her rights to the proceeds from the life insurance policy when she entered into a community property settlement with Mr. Albritton after their divorce. It is further contended that Ms. Watson lost her right to claim the proceeds of this policy because the deed by which Mr. Albritton purchased Ms. Watson's one-half interest in the former community home assigned all funds in the escrow account of the lender to Mr. Albritton. The premiums on this policy were paid from that escrow account. We find that this argument is meritless.
The insurance proceeds did not exist when these contracts were perfected and were not a part of the community property owned by the parties. Mr. Albritton owned this insurance policy and he had the right to change the beneficiary if he desired. He did not do so.
This case is similar to Standard Life Insurance Co. of the South v. Franks, 278 So.2d 112 (La.1973). In Standard Life, a life insurance policy was purchased during the marriage and the wife was named the primary beneficiary. The parties separated and a community property settlement was signed whereby the wife, Mrs. Dahlquist, transferred commmunity assets to her husband who later died without changing the named beneficiary of the life insurance policy in question. The court held that the named beneficiary was entitled to the proceeds of the policy. The court stated:
The death benefits of the life insurance policy were never community property, for there was a named beneficiary other than the estate of the insured. Death benefits payable to one other than the estate are not part of the community of acquets and gains, and they were not here made a part of that community through the settlement agreement. We need only examine the contract of insurance, therefore, to determine to whom are due the funds on deposit. The contract of insurance contained a provision for change of beneficiary. The deceased did not exercise the right to change the beneficiary. We need not inquire into whether he desired to change the beneficiary, for we are bound by the unambiguous contract which names the beneficiary. It is true that the policy of insurance, as opposed to the death benefits under the policy, was transferred in the community settlement. The deceased was in fact vested with all the rights and obligations under the policy of insurance. He owned the policy, but not the death benefits. Insofar as the death benefits were concerned, he retained only the contractual right to change the beneficiary.
Since the death benefits of a life insurance policy which are not payable to the decedent's estate are, as we have said, not community property, the death benefits of the life insurance policy here were not community assets. Accordingly, Mrs. Dahlquist never divested herself of the death benefits nor renounced those benefits when she transferred "any and all other community property" to the deceased. As the named beneficiary she is entitled to the funds on deposit.
Under LSA-R.S. 22:647 the lawful beneficiary of the life insurance policy is entitled to the proceeds of the policy against the heirs and legatees of the insured. Thus, the forced heirs of the decedent, Jerry L. Albritton, have no claim to the proceeds payable as a result of Mr. Albritton's death pursuant to the terms of the insurance policy involved herein. Furthermore, we find no evidence of any intention *1255 by the insured to make anyone other than Ms. Watson the beneficiary of this policy.
Therefore, the judgment of the court below is reversed. Accordingly, judgment is now rendered as follows:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that the funds deposited by the plaintiff in the registry of the Third Judicial District Court shall be paid to Monica Karen Binford Albritton Watson and that the demands of Monica Karen Binford Albritton Watson as natural tutrix of the minors Melinda Kristen and Ann Marie Albritton and Loy Albritton as the tutor of Ashley Lane Albritton are dismissed.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all costs in this court and in the court below are to be paid from the proceeds deposited with the district court.
REVERSED AND RENDERED.