h SULLIVAN, Judge.
This appeal involves an action for the reduction of testamentary donations made by Joseph Burton Willis, Sr. to Elizabeth Lee Willis Zimmerman, one of his six surviving children. The trial court rendered judgment which decreed that Elizabeth be allowed to pay $60,583.04 to Willis’ succession in satisfaction of her obligation to reduce, to the disposable quantum, the donations mortis causa she received. The trial court also ordered that, after such payment is made to the succession, Elizabeth be placed in possession of the particular legacies bequeathed to her by Mr. Willis in his testament.
Elizabeth appealed, maintaining that the trial court erred in applying La.Civ.Code art. 1505(C) to reduce her testamentary legacies by the amount of life -insurance proceeds that she received and in miscalculating the life insurance proceeds at $22,000.00 instead of $20,000.00, the proper amount. Mr. Willis’ three sons, Phillip Willis, John Willis, and Joseph Burton Willis, Jr., and Mr. Willis’ divorced wife, Celine Willis, answered Elizabeth’s appeal. These four parties, hereafter referred to as the Willises, assert that the trial court erred in undervaluing a sixteen acre tract of 12Iand bequeathed by particular legacy to Elizabeth and in denying their motion for new trial to correct an inaccurate acreage measurement on a separate tract of land which was also bequeathed by particular legacy to Elizabeth. The Willises also contest the propriety of the trial court’s assessment of costs to them.
For the following reasons, we reverse the trial court’s judgment insofar as it required *922 Elizabeth to pay to her deceased father’s succession the amount of life insurance proceeds which she received upon his death. In all other respects, we affirm.
FACTS
Most of the facts which are pertinent to this opinion were concisely set forth by the trial judge in his reasons for judgment, which were rendered on January 24, 1995. From these reasons, we adopt the following factual recitation:
Joseph Burton Willis, Sr. died testate on March 28, 1993. Mr. Willis was survived by six of his seven children: Elizabeth Lee Willis Zimmerman, Joseph Burton Willis, Jr., Marilyn Faye Willis, John David Willis, Phillip Robert Willis, and Emily Anne Willis Bronfield.
In Mr. Willis’ olographic will dated February 5, 1989, he bequeathed to Father Robert Willis Courville the usufruct for life of the 54 acres, more or less, located in the fifth ward. He bequeathed his home and grounds, free of debt, with all contents and his law office, including all contents, books and files, to Emily. He also bequeathed 15[sic] acres, more or less, located in the first ward and all of the property owned, approximately 150 acres, in the Kidderville Plantation to Elizabeth. He granted a lifetime usufruct of all property inherited from his parents to his sister, Hazel Willis Fruge. Finally, he left the balance of his property to all seven of his children, subject to the lifetime usufruct of his former wife, Celine Willis.
On April 11, 1994, Elizabeth filed a “Petition for Delivery of Particular Legacy.” On July 18, 1994, Emily also filed a “Petition for Delivery of Particular Legacy.” On September 14, 1994, Phillip Willis and Joseph Burton Willis, Jr. filed an “Opposition to Inventory of Notary,” challenging the valuation of certain tracts of land.
On September 9,1994, in docket number 54,402, Phillip, John and Joseph Burton Willis, Jr. (hereinafter referred to as “ex-ceptors”) filed a “Petition for Reduction of Legacies,” claiming that the bequests to Emily and Elizabeth impinge upon their forced portions, and demanding collation and a reduction of the excessive legacies.
Is On September 22, 1994, Elizabeth filed an “Amended Petition for Delivery of Particular Legacy by Reduction of Excess Donations,” alleging that her forced portion is $46,493.46 and that she be allowed to pay to her father’s estate $35,503.04 in return for possession of her particular legacies.
On December 19,1994, a stipulation was entered into that Emily be entitled to receive her particular legacies; that she assume the obligation on various debts in favor of Iberia Savings Bank and Teche Bank and Trust Company; that she bear her proportionate share of the inheritance taxes; that she renounce her portion of the legitime in the amount of $46,493.95; and that she deliver certain movables to other family members.
On December 23,1994, Elizabeth further amended her petition to add two tracts of land located in the Kidderville Plantation which were omitted from the first amending petition. This addition increased the balance due the estate from $35,503.04 to $38,583.04.
On January 13,1995, a hearing was held on Elizabeth’s Petition for Delivery. After the Court heard all of the evidence and the argument of counsel, the matter was taken under advisement.
The property in question was inventoried by Randall P. Serrett, Attorney and Notary Public. Mr. Serrett filed the inventory list in the succession proceedings on February 18, 1994. Mr. Serrett determined that, as of the date of his death, Mr. Willis owned immovable property valued at $661,797.00 and movable property valued at $127,191.80. From this total asset value of $788,988.80, Mr. Ser-rett deducted the total estate debts of $231,-067.30 to arrive at a net estate value of $557,921.50.
Using this net estate value, the law of forced heirship mandates that the forced portion of the estate is $278,960.75 and the disposable portion is the same amount. Each of the six children are therefore entitled to receive one-sixth of $278,960.75 or $46,493.46 as their respective forced portions.
*923 After Elizabeth appealed and the Willises answered her appeal, the trial court rendered and signed a judgment of possession on August 31, 1995, which placed Elizabeth into possession of the sixteen acre tract located in the first ward and seven of the eight tracts owned by Mr. Willis in Kidderville Plantation. The trial court | ¿recognized and approved Elizabeth’s renunciation of the easternmost 55.11 acres of the eighth Kidderville Plantation tract, which measured 89.78 acres. The trial court also ordered that the westernmost 34.67 acres of this tract remain in the succession until the happening of “a final resolution of the matters presently on appeal resulting from the order of this Court entered March 10,1995.” Additionally, the trial court recognized and approved Elizabeth’s renunciation of her legitime.
LIFE INSURANCE PROCEEDS
Elizabeth asserts the trial court erred in requiring her to pay $22,000.00 in life insurance proceeds to the succession in addition to the $38,583.04 she was required to pay under her obligation to reduce. She maintains that the trial court erred by, in effect, including the life insurance proceeds in the calculation of the mass of Mr. Willis’ succession, which she alleges is a misapplication of La.Civ.Code art. 1505(C). Elizabeth also contends that the trial court erred in setting the life insurance proceeds amount at $22,000.00 and not $20,000.00, the amount that she actually received.
We note initially that Elizabeth testified that she did in fact receive only $20,000.00 from two separate veterans life insurance policies on which she apparently was Mr. Willis’ named beneficiary. No other evidence contradicted her testimony. The trial court erred in finding that she received $22,-000.00.
La.Civ.Code art. 1505 provides, in pertinent part, as follows:
A. To determine the reduction to which the donations, either inter vivos or mortis causa, are liable, an aggregate is formed of all the property belonging to the donor or testator at the time of his decease; to that is fictitiously added the property disposed of by donation inter vivos, according to its value at the time of the donor’s decease, in the state in which it was at the period of the donation.
B. The sums due by the estate are deducted from this aggregate amount and the disposable quantum is calculated on the balance, taking into consideration the number of forced heirs.
IsC. Neither the premiums paid for insurance on the life of the donor nor the proceeds paid pursuant to such coverage shall be included in the above calculation. Moreover, the value of such proceeds at the donor’s death payable to a forced heir, or for his benefit, shall be deemed applied and credited in satisfaction of his forced share.
(Emphasis added.)
Life insurance proceeds which are payable to a named beneficiary other than the insured’s estate are not a part of the insured’s estate. Succession of Lane, 95-0558 (La.App. 4 Cir. 9/28/95), 662 So.2d 82, writ denied, 95-2510 (La.12/15/95), 664 So.2d 440. These proceeds “do not come into existence during the life of the insured, never belong to him, and are passed by virtue of the contractual agreement between the insured and the insurer to the named beneficiary.” Kambur v. Kambur, 94-775, p. 6 (La.App. 5 Cir. 3/1/95), 652 So.2d 99, 103, citing American Health & Life Ins. Co. v. Binford, 511 So.2d 1250, 1253 (La.App. 2 Cir.1987). The life insurance proceeds paid to a named beneficiary are not subject to the civil code articles on donations inter vivos or mortis causa or the constitutional principles of forced heirship. Succession of Lane, 662 So.2d 82; Kambur, 652 So.2d 99; Binford, 511 So.2d 1250.
In his reasons for judgment, the trial judge applied the second sentence of La.Civ. Code art. 1505(C) in finding that the $22,-000.00 life insurance proceeds Elizabeth received must be credited to her legitime. The trial judge then added this amount to the $38,583.04 and determined that her legacies must be reduced by $60,583.04. The trial court erred in doing so. By ordering Elizabeth to pay the life insurance proceeds to the succession, the trial court effected a redis *924 tribution of these proceeds from the intended and named beneficiary to the other forced heirs. This is not the purpose of the second sentence of Article 1505(C). If Elizabeth had claimed and did not intend to renounce her forced share, then the life insurance proceeds would have properly been “applied [to] and credited in satisfaction of [her] forced share.” Id. | (¡However, Elizabeth opted to renounce her forced share and seek delivery of her particular legacies, subject to the reduction thereof to the disposable portion.
The life insurance proceeds are Elizabeth’s and form no part of Mr. Willis’ estate. They are not subject to being included in a reduction calculation. In the realm of forced heirship, life insurance proceeds, when payable to a forced heir, can only be used as a credit against that heir’s forced portion. The trial court erred in requiring Elizabeth to pay this money to Mr. Willis’ succession, a result which violated the intent of the contractual provisions of the life insurance policies.
PROPERTY VALUATION
The Willises contest the trial court’s acceptance of the notary’s valuation of item number eight of the inventory, a sixteen acre tract of land located in St. Martinville, Louisiana. The land is improved with a 1,248 square foot wood-framed rental house and two mobile home spaces. The notary valued this tract at $85,500.00, based on an appraisal done by Tookie Inzerella.
The Willises contend that the trial court erred in not valuing the property at $119,-500.00, according to their appraiser’s estimate of its value. They maintain that their appraiser, Becky Jones, employed the required “highest and best use” appraisal method; Inzerella, on the other hand, valued the property “as is.”
Jones testified that she is a Louisiana State Certified Residential Appraiser and a member of the Lafayette Board of Realtors. She also is a licensed real estate broker. Jones stated that she inspected the sixteen acre tract, which is zoned as commercial and single family residential; it is presently an unrestricted parcel. Jones stated that, because 1,500 feet of the property faces Willis Street, the “highest and best use” of the tract would be to subdivide the frontage into fifteen 100 foot residential lots. She stated that she valued these lots at $6,500.00 each, for a total value of the frontage of $97,500.00. Jones opined that these lots would be “immediately sellable.” The | yremaining eleven acres would, according to Jones, be best used as farmland valued at $2,000.00 per acre. She testified that the appraised value at the date of Mr. Willis’ death was $119,500.00
Our review of Jones’ actual written appraisal reveals a discrepancy between her testimony and the appraisal. In the appraisal, the fifteen lots were valued at $5,500.00 each, making the total value of the sixteen acre tract $104,500.00.
On cross-examination, Jones stated that the Willis Street frontage is not subdivided into lots. She conceded that it would be more difficult to sell the sixteen acres as a whole and that the value of the tract would be lower than her appraised value if a sale of the whole tract were to take place.
Inzerella testified that she has been a real estate agent in St. Martin Parish since 1978. She stated that she has completed the real estate broker and appraiser classes, but that she has not taken the state licensing tests. Therefore, she is not licensed by the state as a broker or an appraiser. However, she stated that she is approved as an appraiser by St. Martin Bank and Trust Co., Teche Bank and Trust Co., and First National Bank of St. Martin. She stated further that she had previously been appointed by the court as an appraiser in succession and divorce eases and for sheriffs sales.
Inzerella testified that she appraised the property at $85,500.00 as an entire tract and did not take into consideration any potential subdividing of the property. According to Inzerella, her valuation realistically reflected the “unencouraging” decline in real estate values in the St. Martinville area. She also opined that the value of the tract may have declined further since Mr. Willis’ death.
The trial court accepted Inzerella’s $85,- *925 500.00[1] value for this tract. Although the trial judge recognized that the “highest and best use” appraisal method is the ^accepted method, he found Jones’ $104,500.00 value to be “remote and speculative” due to the lack of any plan to subdivide the property in the foreseeable future.
The notary’s inventory is considered as prima facie proof of all matters shown therein. La.Code Civ.P. art. 3135. An interested person may traverse the property values contained in the inventory. The person traversing the valuation has the burden of proving that the inventory values are inaccurate.
In Succession of Guerin, 542 So.2d 1102, 1106 (La.App. 1 Cir.1989), the court stated:
In determining the market value of any piece of land, the court should look to the “highest and best use” of the land. Pointe Coupee Electric Membership Corporation v. Mounger, 447 So.2d 1104 (La.App. 1st Cir.1984). “Highest and best use” is determined by the most profitable use to which the property may be put in the foreseeable future, excluding remote and speculative value. Prentice Oil and Gas Company v. Caldwell, 355 So.2d 1327 (La.App. 1st Cir.1977), writ denied, 358 So.2d 640 (La.1978).
(Emphasis added.)
In Succession of Guerin, this “highest and best use” rule was borrowed from expropriation cases and applied to a succession case. While we understand the rationale behind the public policy of giving landowners whose property has been expropriated the value of that property based on its “highest and best use,” we are not sure that such a rule should apply to all succession cases. In any event, we conclude for the following reasons that the trial court’s rejection of Jones’ valuation was not erroneous. We agree that this value is too “remote and speculative.”
In Town of Rayville v. Thomason, 404 So .2d 1290, 1293 (La.App. 2 Cir.1981), the second circuit reasoned as follows:
If unimproved property is to be valued on the basis of residential development, there must be some reasonable expectation that the property will be used for that purpose in the not too distant future. State, Department of Highways v. Talbot, 200 So.2d 97 (La.App. 1st Cir.1967), writ refused 251 La. 49, 202 So.2d 658 (1967). Some factors to .be considered in determining highest and best use are: proximity to areas |9already developed in a manner compatible with the intended use; action already taken to develop land for that use; scarcity of land available for that use; use permitted by zoning ordinances; use to which the property is being put at the time of taking; existence of offers to buy property by those wanting to develop residential property or by those wanting to buy residences; and residential market in the vicinity. City of New Orleans v. Cloutet, 296 So.2d 357 (La.App. 4th Cir.1974).
No evidence whatsoever was presented to substantiate Jones’ valuation based on subdividing a portion of the tract. This is not sufficient to meet the test of a “reasonable expectation” of residential development in the not too distant future. The Willises did not successfully traverse the $85,500.00 value contained in the notary’s inventory.
NEW TRIAL
The Willises maintain the trial court erred in not granting their motion for new trial to correct an error in the acreage measurement of items numbers twenty-eight and thirty-five of the inventory. The inventory, which was based on a survey performed in 1984 by Edmond E. Dupre, Jr., showed tract number twenty-eight at 19.691 acres and tract number thirty-five at 20 acres. The Willises contend in their motion that a subsequent survey done by Clarence Thibodeaux in 1989 reveals that the combined acreage of these two adjacent tracts is 54.48 acres, not 39.691 acres. They asserted that the 39.691 acre measurement adopted by the court was “contrary to the law and the evidence.”
La.Code Civ.P. art. 1972 provides:
*926 A new trial shall be granted, upon contradictory motion of any party, in the following cases:
(1) When the verdict or judgment appears clearly contrary to the law and the evidence.
(2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
| iq(3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.
If a trial judge concludes that the judgment is contrary to the law and the evidence, he must grant upon proper motion a new trial. Kaplan v. Missouri-Pacific R.R. Co., 409 So.2d 298 (La.App. 3 Cir.1981).
Our review of the record indicates that the Thibodeaux survey was entered into the record as an exhibit to Elizabeth’s pretrial memorandum. This was filed on January 10, 1995, three days before the hearing. The discrepancy in acreage was not brought to the trial judge’s attention at the hearing by the Willises. No testimony or evidence was presented at the hearing in an attempt to traverse the acreage measurements. In short, the Willises did not assert this discrepancy as an issue at the hearing. Therefore, their failure to do so resulted in the trial court’s acceptance of the acreage measurements contained in the inventory. In short, the Willises failed to successfully traverse at the hearing the values contained in the inventory. We conclude that they cannot now be allowed to assert that the trial court wrongfully denied their motion for new trial. The trial court’s acceptance of the acreage measurements contained in the inventory was therefore not erroneous.
COURT COSTS
The Willises failed to brief this assignment of error dealing with the trial court’s assessment of court costs to them. We consider this assignment as having been abandoned. Uniform Rules, Courts of Appeal, Rule 2-12.4.
DECREE
For the foregoing reasons, we reverse in part the trial court’s judgment ordering Elizabeth to pay $60,583.04 to Mr. Willis’ succession by $22,000.00, and order her to pay $38,583.04 to the succession in satisfaction of her obligation to reduce her excessive legacies.
InCosts of this appeal are assessed to the Willises.
REVERSED IN PART; AFFIRMED IN PART; AND RENDERED.

. In the reasons for judgment, the trial court “adoptfed] the $85,000 appraisal of Item # 8 by Tookie Inzerella.” This $500.00 difference appears to be a clerical error.